WALKER *vs.* FENNER ET AL.

[DETINUE FOR SLAVES BY REMAINDER-MEN AGAINST PURCHASER AT SHERIFF'S
SALE UNDER EXECUTION AGAINST TENANT FOR LIFE.]

1. *Husband's right to wife's chattels.*—In this State, prior to the passage of the
   several statutes securing to married women their separate estates, if slaves
   were bequeathed to one person for life, with a vested remainder to a mar-
   ried woman and others as tenants in common, and, with the assent of the
   executor, went into the possession of the person having the life estate, the
   interest of the wife vested in the husband, no adverse possession being
   shown, and he became tenant in common with the other remainder-men.
2. *Misjoinder of plaintiff's fatal.*—In detinue for a slave, by several remainder-
   men, tenants in common, after termination of precedent life estate, if the
   wife, whose interest is vested in her husband, be joined as co-plaintiff with
   him, the misjoinder is fatal to the entire action.

APPEAL from the Circuit Court of Lauderdale.

Tried before the Hon. THOMAS A. WALKER.

This action was brought by Thomas B. Fenner, Joseph F.
Fenner, Richard H. Fenner, Julius Johnson and Mary H.

Johnson, his wife, Margaret E. Fenner, Ann M. Fenner, and Lucy M. Fenner, (the two last named being infants, who sued by their next friend, Thomas B. Fenner,) against Leroy P. Walker, to recover two slaves, which they claimed under the will of John Howson, who was the uncle of their father, Robert Fenner. Said will was executed on the 18th March, 1842, in Halifax county, North Carolina, and contained the following clause: "The residue of my property, of every description, I wish to be equally divided,—the one half of which I give to my nephew, John H. Fenner, and his heirs, forever; the other half of such division I lend to my nephew, Robert Fenner, of Alabama, during his natural life, for his sole and exclusive benefit and support, and for no other purpose, that such property as I lend to the said Robert, or its annual increase, shall be in no wise subject to the debts of the said Robert which may have been contracted by him, or those contracted hereafter; and, at the death of the said Robert, I give such portion of my estate as I have hereby loaned to him, to his children, to be equally divided among them, to them and their heirs forever."

On the trial, the parties agreed on the facts, which are thus stated in the bill of exceptions: "That the negroes sued for are of those conveyed by the will of John Howson, deceased, executed on the 18th March, 1842, in Halifax county, North Carolina"; "that said testator, at the time of making and publishing said will, resided in said county of Halifax, North Carolina, where the said negroes then were in his possession, and that he resided and died there in November, 1842; that said will was duly and legally probated in said county of Halifax, in November, 1842; that on the 23d March, 1843, with the assent and approval of the executors of said testator, a division of the property belonging to his estate, under and conformably to said will, was made by the proper court of said county, which division was confirmed by said court in May, 1843; that on this division the negroes sued for were allotted and set apart, according to the terms and stipulations of said will, to Robert Fenner, one of the legatees named in said will, and sanctioned and assented to by the said executors, and then and there delivered by them to said Robert Fenner, to be owned and held by him subject

to the provisions of said will, and were removed by him from said county of Halifax to Lawrence county, Alabama, in April, 1843; that the said Robert Fenner, at the time said will was executed, and at the probate thereof, and for many years anterior, resided in and was a citizen of said county of Lawrence in this State, together with the present plaintiffs, all of whom (except the said Julius Johnson) are his children, and were living with him when he received said negroes; that the said Julius Johnson married the said Mary H., a daughter of the said Robert Fenner, in December, 1843, in said county of Lawrence, and from thenceforward lived with the said Robert Fenner, together with the other plaintiffs in this suit, as members of his family, up to the time of the sale to the defendant hereinafter mentioned."

"It is further admitted as a fact, that the said Robert Fenner, immediately on obtaining possession of said negroes under said division, that is to say in April, 1843, brought them to said county of Lawrence, where they remained continuously on his plantation,—he claiming and holding them subject to the provisions of said will, and recognizing and admitting the remainder over in these plaintiffs after the termination of his life estate,—until the 9th February, 1846, when they were levied on by the sheriff of said county of Lawrence, as the property of said Robert Fenner, by virtue of sundry executions against him, issued upon judgments theretofore rendered against him; that said negroes were sold by said sheriff, in pursuance of said levy, as the property of said Robert Fenner, on the 9th March, 1846, and were purchased by the defendant at said sale. It is further admitted as a fact, that said will gave to said Robert Fenner a life estate only in said negroes, with a vested remainder over to his children, the present plaintiffs; that said Robert received and held said negroes in subordination to the remainder, and always recognized and asserted the title of the remainder-men; that said will was never probated in Alabama, nor was it ever recorded in Lawrence county until September, 1844; that at the time of the said levy, and ever since the said division in North Carolina, said Robert Fenner had been and was in possession of said negroes, in said county of Lawrence, always holding them in subordination to

the remainder-men; that said Robert Fenner died, insolvent, on the 19th September, 1847; that said negroes are worth $1,000 each, and their annual hire since the defendant's purchase $80; that said negroes have been in the defendant's possession since the 1st January, 1848,—he claiming them as his property ever since his said purchase, though he did not have possession of either of them in 1846 and 1847, having hired them out during those years; that the said judgments against said Robert Fenner were valid and subsisting, and were rendered at the March term, 1845, of the circuit court of Lawrence; that said executions were regularly and properly issued, and said sale regularly and legally conducted; and that a demand was made of the defendant, for said negroes, soon after the death of said Robert Fenner."

The defendant demurred to the evidence, in short by consent, and the plaintiffs joined in the demurrer. The court held the evidence sufficient, and therefore overruled the demurrer; and the defendant excepted. The overruling of the demurrer, and the rendition of judgment for the plaintiffs, are now assigned as error.

R. W. WALKER, for the appellant:

The wife of Julius Johnson was not a proper party, and the misjoinder was fatal to the suit. The remainder being vested, the interest of Mrs. Johnson, eo instanti the marriage, became the property of her husband, and he alone can sue for its recovery.—1 Chitty's Pleadings, 33; Broom on Parties, 158, § 279; 3 Bacon's Abridgment, 134; 8 Porter, 36, 40; 4 Ala. 350; 10 ib. 819–21; 17 ib. 731, 676; 15 ib. 373; 1 Hill's Ch. R. 404; 6 Watts, 301; 1 Stephens' N. P. 740; 1 Hawks, 67; 2 Barbour's S. C. R. 352; Gibson v. Land, 27 Ala. 118, and cases there cited in opinion of Rice, J.

DAVID P. LEWIS, contra:

1. It will not be controverted, that the wife, whenever her right by survivorship is not extinguished, may be joined in a suit for her personal estate. Is Mrs. Johnson's right by survivorship extinguished? Does the marriage of the wife, pending the life estate, and after the executor has assented to the same, ipso facto extinguish this right in her estate in remainder?

2. The wife may be joined in a suit for all personal estate in action that accrues to her during coverture.—2 Roper on H. & W. 134—5; 1 Chitty's Pleadings, 30; 9 Ala. 720. She must join for such debts, &c., as were due to her before marriage, and may join for a conversion of her chattels afer marriage.—Roper, *supra;* 1 Bright on H. & W. 34–5.

3. The possession by the husband of the wife's personal estate, to exclude her right of survivorship, must be an actual or potential possession.—Johnson v. Wren, 3 Stew. 17; *ib.* 375; Hogan v. Bell, 4 Stew. & P. 286; Mason v. McNeill, 23 Ala. 213; 2 Kent's Com. 115–6; 1 Bright on H. & W. 34; Reeves Dom. Rel. ch 1.

5. Constructive possession is not favored in law to defeat the wife's right of survivorship.—Authorities cited *supra.* It is favored to vest survivorship in the husband, as against the wife's administrator,—Magee v. Toland, 8 Porter, 42; Pitts v. Curtis, 4 Ala. 350; 16 *ib.* 343; 17 *ib.* 729–30; Clancy on M. W. 147; 5 B. Monroe, 556.

5. Bequest of slaves to A. for life, with remainder to B., the wife of C.; *held*, that if C. die without reducing the slaves to possession, or appropriating or disposing of them, B. takes them by survivorship, and not C.'s administrator.—Mason v. McNeill, 23 Ala. 213; 2 Litt. 281; 4 *ib.* 356; 7 B. Monroe, 216.

6. In slaves bequeathed as above, the wife's right of survivorship remains, pending the life estate, even against an assignee for value.—1 B. Monroe, 152; 7 *ib.* 257, 535; 2 H. & M. 392; Keyes on Chattels, § 446. And that her equity to a settlement, on the above case, is not destroyed, see Thomas v. Kennedy, 4 B. Monroe, 235–8.

7. A reduction to possession, which would give the husband the right to the property by survivorship, as against the wife's administrator, does not necessarily extinguish her right of survivorship, as against his administrator.—Mason v. McNeill, 23 Ala. 216.

8. So far from marriage, *ipso facto*, extinguishing the wife's right of survivorship in her remaining or reversionary estates, this right of the wife will prevail, when the husband dies pending the life estate, against the assignee in bankruptcy, and against an assignee for value.—9 Vesey, 87;

1 Bright on H. & W. 81–86. And though the estate be immediately recoverable, still, if the husband die before this is done, the wife takes by survivorship; and the husband cannot assign or release his wife's annuity beyond his life, she surviving.—1 Bright, 74; 2 *ib.* 440.

9. The husband cannot, by sale or transfer, bar his wife's reversionary interest in personal property; nor can husband and wife, by deed, destroy her right to the same by survivorship.—Clancy, 146–7, and cases there cited.

10. The husband cannot absolutely assign his wife's choses in action, either legal or equitable, even for value. He can only assign the right which he has—viz., the right to reduce them to possession; and if he die before reduction to possession by the assignee, the wife takes by survivorship, as she would have taken had there been no assignment.—1 Bright, 77–85.

11. And her right by survivorship, in the case of remaining or reversionary interests, seems stronger than in the case of a chose in action.—4 B. Monroe, 237–8.

12. If the husband assign his wife's legal choses in action (*i. e.* those recoverable at law), the assignee may sue for them in the name of the husband and wife.—8 Beavan, 211; 1 Bright, 79.

13. The case of Gibson v. Land, 27 Ala. 120, holds that the husband, in cases analogous to this, *may* sue alone, but not that he *must* sue alone.

RICE, C. J.—The decision of this case cannot be influenced by any of our statutes, in relation to the rights which the husband acquires by the marriage to the property of his wife; because the facts, upon which the rights of the parties now before us depend, occurred before the adoption of any of those statutes.

When an estate in remainder, of slaves, has *vested* in the wife under a will, and, by the assent of the executor, has become a *legal* interest, and the possession is with the person having the precedent particular estate, and no adverse possession is shown, such vested legal interest of the wife, according to our decisions, passes by the marriage to the husband; and if her said interest be that of a tenant in common with

others, then, on the marriage, she ceases to be a tenant in common with them, and her husband is substituted for her as a tenant in common with them.—Magee v. Toland, 8 Porter, 36; Pitts v. Curtis, 4 Ala. R. 350; Broome v. King, 10 Ala. R. 819; Chambers v. Perry, 17 Ala. R. 726; Gibson v. Land, 27 Ala. R. 117.

We are aware that, in this respect, there are decisions of the courts of some of our sister States opposed to our decisions, and that some of the reasoning of our own court in the case of Mason v. McNeill, 23 Ala. R. 208, is also opposed to what we have above stated to be the law as settled by our former decisions.—McBride v. Choate, 2 Iredell's Eq. Rep. 610; Whitehurst v. Harker, 2 Iredell's Eq. Rep. 293; Weeks v. Weeks, 5 ib. 111; Swanson v. Swanson, 2 Swan's Rep. 446; Hall v. McLain, 11 Humph. Rep. 425.

But our former decisions, to which we adhere, are sustained by several decisions of the courts of our sister States, and by what we deem far more satisfactory—uncontroverted elementary principles; some of which we will now state : By marriage, the husband and wife are as one person in law. There can be no partnership, nor community of goods, between them. Her personal chattels in possession vest absolutely in him. In the absence of any adverse possession, the possession of the tenant for life, under the instrument creating the estate for life and the remainder in a personal chattel, is the possession of the remainder-man. The possession of one tenant in common is the possession of all of them, until there has been a conversion or ouster by one of them.—Pettyjohn v. Beasley, 4 Dev. Rep. 512; Stephens v. Doak, 2 Iredell's Eq. Rep. 348; see also the authorities cited in my opinion in Gibson v. Land, 27 Ala. Rep. 117; Pollard v. Merrill, 15 Ala. R. 169.

All the plaintiffs in an action must be entitled to recover; otherwise none of them can recover in it.—Hardeman v. Sims, 3 Ala. R. 747; Cochran v. Cunningham, 16 ib. 448; Patton v. Crow, 26 ib. 426.

It results from what we have above said, in connection with the admitted facts, that Mary H. Johnson, the wife of Julius Johnson, had no interest in the slaves sued for at the commencement of this suit, and that she was not entitled to

recover upon the facts admitted. Making her a plaintiff with the others, was a misjoinder of plaintiffs; and such misjoinder was, *per se*, enough to defeat a recovery upon the facts shown in this record.

The court below erred in overruling the demurrer to the evidence; and its judgment is therefore reversed, and the cause remanded.