W. R. Brassell and Brassell & Brassell, all of Montgomery, for appellant. Ball & Beckwith, of Montgomery, for appellee.

SOMERVILLE, J. Plaintiff sues defendant in statutory ejectment and the court, sitting without a jury, rendered a judgment for plaintiff.

[1] After showing that one Daniel Baker, defendant's husband, was the owner of the lot sued for, plaintiff introduced in evidence a mortgage to himself on this lot from said Baker, and also a foreclosure deed under the mortgage. These conveyances are not set out in the bill of exceptions, nor is there any showing as to their stipulations and recitals, except that the mortgage note was for $225. Whether defendant's objections to their introduction in evidence were well taken it is impossible to determine.

[2] The defense seems to have been that the mortgage debt was paid before the foreclosure by plaintiff's reception of rents collected from the mortgaged property. But not only is the date of the foreclosure not shown, but the bill of exceptions does not purport to contain all the evidence adduced on the trial. We cannot, therefore, pronounce the judgment erroneous.

[3] The trial judge erroneously allowed plaintiff to testify to an agreement he had made with Daniel Baker, now deceased, authorizing him to apply the rents from the mortgaged place to Baker's general account. But the same testimony was given several times previously without objection from defendant, and the fact would have remained in evidence regardless of the rulings complained of.

But, in any view of the case, the condition of the bill of exceptions does not enable us to discover error in the judgment.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.

---

(78 South. 827)

REYNOLDS et al. v. TRAWICK et al.
(5 Div. 693.)

(Supreme Court of Alabama. May 9, 1918.)

1. EJECTMENT ⬤109—DIRECTION OF VERDICT —RIGHT TO RECOVER.

In ejectment by several plaintiffs who claimed as children of life tenant, and as remaindermen, when there was evidence that one of them was not the life tenant's child, it was error to give general affirmative charge, since all the plaintiffs in ejectment must recover.

2. NEW TRIAL ⬤38—GROUNDS—SUBMISSION OF CASE TO JURY.

Error in invading jury's province by general affirmative charge contrary to evidence is ground for new trial.

3. APPEAL AND ERROR ⬤1067—HARMLESS ERROR—INSTRUCTIONS.

If plaintiffs in ejectment are otherwise entitled to general affirmative charge, no reversible error can be predicated on failure to restrict recovery to plaintiffs' proportionate shares, when one claimant entitled to share with plaintiffs was not a party.

4. EJECTMENT ⬤109 — EVIDENCE — GENERAL AFFIRMATIVE CHARGE.

Where evidence in ejectment does not clearly show what part of a lot was included in the description in the complaint or was held by defendants, general affirmative charge for plaintiffs was error.

5. LIFE ESTATES ⬤8—ADVERSE POSSESSION— LIFE TENANT'S POSSESSION.

Where beneficiary of life trust in land took possession, under the deed, such possession inured, conclusively by way of estoppel, to the remaindermen, notwithstanding the deed was color of title only.

6. LIFE ESTATES ⬤28—ADVERSE POSSESSION —GENERAL AFFIRMATIVE CHARGE.

Evidence, in ejectment, connecting grantor's possession with that of the life beneficiary of his trust deed, held not to warrant general affirmative charge for plaintiff remaindermen.

7. EJECTMENT ⬤25(2)—DEFENSE—OUTSTANDING TITLE IN THIRD PERSON.

If defendant in ejectment acquired possession peaceably in good faith under color of title from a grantor then in possession, she could offer evidence of an outstanding title in a third person, with which she did not connect herself, unless plaintiffs established title by adverse possession.

8. EJECTMENT ⬤9(3)—STRENGTH OF TITLE.

In the absence of estoppel, plaintiffs in ejectment must recover on the strength of their own title and not the weakness of defendant's title.

9. ADVERSE POSSESSION ⬤85(1) — PRESUMPTION—HOSTILE CHARACTER.

The presumptions attending possession favor idea of subserviency to the true title until title by adverse possession is complete.

10. PROPERTY ⬤12—MODE OF TRANSFER.

Mere inaction or indifference of fee owner will not divest his title; only estoppel, adverse possession, conveyance, or processes of government can do so.

Appeal from Circuit Court, Lee County; Lum Duke, Judge.

Ejectment by John P. Reynolds and others against Sarah Trawick and others. From order setting aside judgment on directed verdict for plaintiffs, and granting new trial, plaintiffs appeal. Affirmed.

See, also, 197 Ala. 165, 72 South. 378.

Lane & Lane, of Greenville, and E. H. Glenn, of Opelika, for appellants. Barnes & Walker, T. D. Samford, and N. D. Denson & Sons, all of Opelika, for appellees.

McCLELLAN, J. Statutory ejectment, instituted October 17, 1911, by appellants (John P. Reynolds, H. H. Reynolds, Alice Morris, and Ella Christopher) against the appellee Mrs. Trawick and her tenants, who disclaimed. The property in question is a lot (about two acres) in Opelika. The court gave the general affirmative charge for all of the plaintiffs. In response to motion for new trial, the verdict and judgment were set aside and a new trial awarded. From this action of the court the plaintiffs (appellants) appeal.

The material uncontroverted facts disclosed by the record, with special regard to chronological order, are those now to be stat-

---

ed. On February 14, 1844, a patent was issued by the United States to Abijah B. Bennett conveying the half section of which the lot in suit was a part. On January 19, 1863, W. T. Black and wife made conveyance of a lot in Opelika (which plaintiffs claim was the lot in controversy) to Thomas Haws, trustee for Harriet Reynolds, the wife of John Reynolds, during her life and remainder to "the lawful heirs' of her body." The plaintiffs are children of Harriet Reynolds, who died in 1910. Harriet Reynolds lived on the lot for several years, moving away in 1871, or 1872. On November 17, 1893, W. W. Williams and wife executed to C. A. Trawick a deed to the lot described in the complaint. Williams was shown to have been in possession of the lot when he executed the deed to Trawick. The Trawicks moved on the premises, and the grantee and his successors in right have been ever since (1893) in possession thereof. The plaintiffs claim, in virtue of Black's deed, as remaindermen; their mother, the life tenant, having died in 1910. The evidence is entirely silent with reference to any actual possession of the land described in the patent to A. B. Bennett. It is entirely silent with reference to any actual possession of the lot described in the complaint between the time (1871 or 1872) the Reynolds moved away and the time (November, 1893) Williams executed the deed to Trawick.

[1, 2] Since all the plaintiffs in an action of ejectment must recover, the court erred in giving the general affirmative charge for the plaintiffs when this state of the evidence is considered: Mrs. Christopher, one of the plaintiffs, testified she was a daughter of Harriet Reynolds, whereas, according to Mrs. Morris' testimony, Mrs. Christopher was not among the children of Harriet Reynolds. The general charge thus given invaded the jury's province in concluding in favor of the plaintiffs, notwithstanding there was conflict in the evidence with respect to the heirship of one of the plaintiffs, namely, Mrs. Christopher. For this reason the court was justified in granting the motion for new trial.

[3] Daniel Reynolds was a child of Harriet Reynolds. He is not one of the plaintiffs. If the plaintiffs had been otherwise entitled to the affirmative charge, no reversible error could be predicated of the failure of the charge to restrict the measure of the recovery to the proportionate interest or interests of the plaintiffs. Cochran v. Kimbrough, 157 Ala. 454, 47 South. 709; Swift v. Williams, 162 Ala. 147, 150, 50 South. 123.

[4] If the description in the deed from Black to Haws is read in the light of the testimony of W. W. Barnes, a surveyor, even without the drawing or plat with reference to which he appears to have illustrated his testimony before the jury, it was a matter of serious doubt what part, how much, of the lot described in the deed was within the description in the complaint or was within the area held by the Trawicks. The general affirmative charge erroneously took this inquiry from the jury. The action of the court in awarding the new trial was also justified by this error.

[5] The plaintiffs insisted that W. T. Black went into possession of the premises described in the complaint in 1860; that Harriet Reynolds and John Reynolds, her husband, and their family moved on the place in January, 1863, as the Blacks moved out; that the Reynolds family resided on the lot until 1871 or 1872. After their removal in 1871 or 1872 there is no evidence of any possession until November 17, 1893, when Williams, then in possession, made the deed under which the Trawicks have ever since held possession. The possession of Harriet Reynolds, the life tenant, taken under the Black deed, inured, conclusively by way of estoppel, to the benefit of those in whom that deed undertook to invest the remainder, and so notwithstanding the deed from Black operated as color of title only. Hanson v. Johnson, 62 Md. 25, 50 Am. Rep. 199; a decision cited on another, though related, point in L. & N. R. R. Co. v. Philyaw, 88 Ala. page 268, 6 South. 837. See Brittain v. Daniels, 94 N. C. 781.

[6] There was evidence to the effect that Black was in possession of the lot in 1860; but the testimony of the witness Lawler, which has been carefully noted in the light of the comment thereon in the brief for appellants, raised an issue of fact whether Black occupied, was in possession of, the lot before the date of the execution of the deed to Haws, trustee, and, if so, whether the period of Black's possession constituted ten years when added to the period during which Harriet Reynolds was in possession, up to 1871 or 1872. The testimony of this witness cannot be interpreted as being consistent only with the other evidence tending to show that Black was in possession in 1860, or any other particular date ten years or more before the removal of Harriet Reynolds from the place in 1871 or 1872. Hence the giving of the general affirmative charge was not justified by undisputed evidence of title by adverse possession for the ten years preceding the removal of Mrs. Reynolds from the premises in 1871 or 1872.

[7, 8] According to the present record, neither the plaintiffs nor the defendant connected themselves with any grantor who had title to the lot. If through the continuous possessions of Black and Mrs. Reynolds title by adverse possession, for the requisite period, did not vest in Mrs. Reynolds (the ostensible life tenant, who died in 1910) and the remaindermen, the defendant, who claims and took possession under the conveyance from Williams, a grantor in possession at the time (November 17, 1893), was entitled to offer evidence of an outstanding title in a

third person with which defendant did not connect herself. Owen v. Moxon, 167 Ala. 615, 621, 52 South. 527; McCreary v. Jackson Lumber Co., 148 Ala. 247, 251, 41 South. 822; Guilmartin v. Wood, 76 Ala. 204, 211. In the absence of an estoppel, not shown by this record, the plaintiffs must recover, if at all, upon the strength of their title, not upon the weakness of the defendant's right or title.

[9, 10] Neither the defendant nor her predecessors in right or title were bare trespassers. They went into possession under color of title at least. The defendant undertook to show an outstanding title in others than the plaintiffs—a title with which the plaintiffs were not shown to be in any wise connected—by introducing the mentioned patent from the United States to A. B. Bennett, issued in 1844. Unless the presumption is indulged that the plaintiffs or their predecessor (Black) succeeded to the unquestioned title passing to Bennett from the United States, or that the Bennett title had become extinct by the lapse of time, the plaintiffs could not recover without showing an efficient adverse possession of ten years prior to the removal of the Reynolds family from the place. A presumption of this character was indulged in Bennett v. Horr, 47 Mich. 221, 10 N. W. 347, and in Parkersburg Industrial Co. v. Schultz, 43 W. Va. 475, 27 S. E. 255. This court, as Guilmartin v. Wood, supra, illustrates, has held to the view that the presumptions attending possession even favored the idea of subserviency to the true title until adverse possession had effected to invest title in the adverse possessor. This presumption, firmly established in this jurisdiction, contradicts that indulged in the Michigan and West Virginia cases, noted above. In this state entire inaction or indifference on the part of the owner of the fee will not divest his title. Only through estoppel, adverse possession, or conveyance (will, deed, or mortgage), aside from the processes of government, can an unqualified title in fee, once vested, be divested. We cannot accept the cited cases as expressing sound law in this jurisdiction.

The court did not err in granting the motion for a new trial.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.