**RAY et al. v. FARROW.  (5 Div. 888.)**

(Supreme Court of Alabama.  June 12, 1924.)

1. Evidence ☞273(2)—Declarations of plaintiff's ancestor while in possession as to extent of his holding held admissible.

In ejectment, declarations of ownership by plaintiff's ancestor, while in possession of the land, as to nature and extent of his holding was admissible.

2. Ejectment ☞90(1)—Remainderman's testimony that his mother claimed land under dower held admissible.

In an action in ejectment, testimony of remainderman that his mother in possession claimed the land as set apart to her as dower was admissible.

3. Ejectment ☞89—Documents showing dower interest of plaintiff's mother and character of title of her successors in interest held admissible.

In an action in ejectment in which plaintiffs claimed title as remainderman, petition, decree, etc., on allotment of dower to their mother, were admissible as documents identifying the dower lands and showing character of their mother's possession and her successors in interest, since no possession adverse to plaintiffs could be acquired during continuance of her life estate.

4. Ejectment ☞86(4)—Proof of possession in plaintiff's ancestor held to make prima facie right in his heirs at law.

Plaintiff's ancestor in possession of land under claim of title or exercising acts of ownership is presumed to have had title thereto, and proof of that possession and claim of ownership while in possession made out a prima facie right in his heirs at law after termination of widow's life estate, as against one who showed no title in himself or third person, though having color of title.

5. Dower ☞79(1)—Husband presumed to have had title to which right of dower attached.

If husband was seized of land in possession during coverture, he was prima facie

seized in fee, and, unless this was impeached, he is presumed to have had title to which right of dower attached under Code 1907, § 3812.

6. Life estates ☞8—Possession of wife and successors in interest before and after assignment of dower held to inure to remaindermen's benefit.

If wife's possession during absence of her husband and to his death, and to assignment of dower and her possession as doweress, and that of her successors in estate, was for a period of 10 years or more, and was of nature required to ripen into adverse possession, such possession inures to benefit of remaindermen, and will support ejectment by them.

7. Evidence ☞372(10)—Record of deed held admissible as an ancient document.

The record of a deed was admissible in evidence in an action in ejectment to establish plaintiff's title, where records showed that deed was more than 60 years of age, and had been of record in the office of judge of probate for more than that period.

8. Evidence ☞372(3)—Deeds made more than 30 years before trial are admissible as ancient and self-proving documents.

Deeds made or land certificates issued more than 30 years before trial, in absence of circumstances to create suspicion, are ancient and self-proving documents, and need not come from proper source, or even be exhibited to court for inspection as to genuineness or age.

9. Ejectment ☞90(1)—Evidence tending to show chain of title from plaintiff's mother to defendant's grantor held admissible.

In an action in ejectment, evidence showing chain of title from plaintiff's mother having only dower interest to defendant's grantor was admissible as tending to show that parties held from a common source, and extent and nature of title and possession.

10. Ejectment ☞90(1)—Evidence explaining character of defendant's title and possession held relevant.

In an action in ejectment by remaindermen against one holding by title from plaintiffs' mother, who had dower interest, evidence as to who went into possession after the mother tended to explain character of defendant's title and possession before and to the time of the death of the mother and was relevant.

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Action in ejectment by A. J. Ray and S. Y. Ray against L. C. Farrow. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

The suit is to recover the N. W. ¼ of the S. W. ¼ of section 15; 30 acres off the west side of S. W. ¼ of S. E. ¼ of section 16; and W. ½ of E. ½ of N. W. ¼ of S. E. ¼ of section 16—all in township 22, range 22, Tallapoosa county.

It was shown that the plaintiffs are the only heirs at law of one Ransom G. Ray, who

was last heard of when he went away to the Civil War, and that he left a widow, who died in 1920. The plaintiffs claim title to the lands sued for as the heirs of said Ransom G. Ray, as remaindermen after the life estate of their mother to whom dower was allotted. Plaintiffs offered as witnesses one Stanford and one Abner Vickers. The testimony of Vickers showed that about the year 1856 Ransom G. Ray was in the possession of a large tract of land in Tallapoosa county, and that he farmed it, grew crops, cut timber for the purpose of building fences, and that witness had heard him refer to it as his land. Witness stated that the land he was talking about was the land that was set apart to the widow as a dower; that he did not know the land by numbers, but that he was with the commissioners and carried the chain for them when they surveyed and set off the land, and that the widow and children remained in possession of the lands six or seven years after that time. Plaintiffs announced that they proposed to offer, in connection with the testimony of this witness, the probate proceedings setting apart the widow's dower and the report of the commissioners with whom witness went out to survey said lands, so as to identify the same. The plaintiffs further offered certified copy of deed from the state of Alabama to James E. Cosby, recorded in the office of the secretary of state, conveying S. ½ of section 15, township 22, range 22, it appearing therefrom that the deed was executed in pursuance of an act authorizing the sale of school lands approved January 15, 1828. Plaintiffs further offered tract book entries of Tallapoosa county and certified copy of the tract book entry in the office of the secretary of state, showing title to the lands in section 16 out of the state. Plaintiffs offered successively the following papers in the probate court of Tallapoosa county: The petition of Mary Jennings for dower in the lands of her former husband, Ransom G. Ray; the decree of the court fixing the date for the hearing of the application; the decree of the court allowing dower; the writ of dower with the return of the sheriff thereon; the report of the commissioners assigning dower, and the decree of the court affirming dower.

Plaintiffs stated to the court that the report was also offered for the purpose of identifying the lands. The defendant objected to each of said papers as they were offered, assigning as grounds therefor to each the general grounds of immateriality and illegality, and that it did not show the petitioner had any right of dower; that the petition did not describe the lands sued for or any part; that it was not shown that the deceased was the owner of the land or had any equity in it. It was agreed that the papers being offered were the papers of record in the probate court of Tallapoosa county. As each paper was offered and objected to the court sustained the objection, and the plaintiffs excepted to each of said rulings.

Plaintiffs offered in evidence record of deed from James Boulware and wife to Ransom G. Ray, dated February 4, 1861, conveying the west quarter of south half of section 15, township 22, range 22. Tallapoosa county; said deed being recorded in the office of the judge of probate of said county. The defendant objected on general grounds and on the ground that it was not shown that the grantors ever owned the land or were in possession of it, because the evidence showed that the title was in another party, and that the deed was offered without accounting for the original.

One of the plaintiffs, A. J. Ray, as a witness, then testified that he was a son of Ransom G. Ray, that there were two children, himself and his brother, the other plaintiff in the case; that he was 63 years old, and that, when Jim Berry was appointed administrator of his father's estate, he came to the house and asked for the papers, and his mother told him that the papers were in the trunk; that he went to the trunk and got some of the papers, but that he could not say whether he got the land papers or not; that he (witness) never had possession of his father's deeds to lands, and never saw or heard of the papers after he grew up; that they were not at their home that he ever knew or heard about; that he lived with his mother until he was 27 years old; and that he had never had any papers and that she did not. The other plaintiff was not present at the trial. Plaintiffs again offered the record of said deed, but the court refused to admit the same in evidence.

Plaintiffs next offered in evidence record of a deed from James E. Cosby and wife to James Boulware, conveying S. ½ of section 15, township 22, range 22, and again offered in evidence, separately and severally, all the papers theretofore offered in evidence and to which objections had been sustained, but the court refused to admit the same in evidence.

A. J. Ray, one of the plaintiffs, further testified that he was about 7 years old when he first knew the lands said to have belonged to his father; that he was born on them. He testified that he, his mother, and brother lived there about 11 years, and there were about 240 acres in the tract where his mother lived. Witness was asked the question: "This 240 acres of land that was set apart as your mother's dower, how was it used, after the time you were old enough to remember about the land?" The defendant objected to the question, and plaintiffs stated that they expected to show by the witness that for 6 years prior to 1871 he knew the 240 acres known as his mother's land; that they lived on it, cultivated it, cut wood from it, exer-

cised acts of ownership of it, and that his mother claimed it as the land set apart as dower to her. The court refused to allow the witness to answer the question. Plaintiffs stated to the court that they expected the testimony of the witness to show that his mother mortgaged the property to one Craddock, that the mortgage was foreclosed; and that Craddock went into possession under the foreclosure. The court sustained defendant's objection to this testimony.

The plaintiffs offered in evidence the record of the mortgage from Craddock and wife to American Freehold Land & Mortgage Company conveying part of the lands in question, stating to the court that they proposed to show in connection with this record that Craddock, after going into possession of said lands, mortgaged the same, and that the mortgage company foreclosed and took possession of the property. Defendant's objection thereto was sustained.

The plaintiffs next offered the record of a deed from the mortgage company to Joe Davis, conveying a portion of the lands sued for, stating to the court that they proposed to show that Joe Davis went into possession of these lands under his purchase. Defendant's objection was sustained.

Plaintiffs then offered in evidence record of deed from Davis and wife to defendant, conveying a portion of the lands sued for. Defendant's objection thereto was sustained.

The plaintiffs also offered to prove by the witness A. J. Ray what was a reasonable rental value of the property sued for, but, on objection being made by defendant, the court refused to allow such proof to be made.

Witness Stanford, being recalled, testified that he knew Ransom G. Ray just prior to the time he went away to the army, and knew the lands said to have been set apart to the widow as a dower. He stated that he knew that this land was in the possession of the widow, claiming it as her dower after it was said to have been set apart; that after her husband went away, they farmed on it, kept the plantation up by fencing it, using the timber as they saw fit, and that he lived in about two miles of it. He stated that it was his recollection that they remained there 3 to 5 years after the allotment was said to have been made. Plaintiffs asked the following question: "Who went into possession after Mrs. Ray?" The defendant objected, and the court sustained the objection.

The plaintiffs requested the affirmative charge, first as to all the lands sued for, and again as to the N. W. ¼ of S. W. ¼ of section 15, township 22, range 22, but each of said charges was refused. The court gave, at the request of the defendant, the affirmative charge with hypothesis, and judgment was rendered in favor of defendant.

Holley & Milner, of Wetumpka, for appellants.

A party in possession of land is presumed to have title thereto, and proof of his possession shows prima facie right of recovery. Higdon v. Kennemer, 120 Ala. 198, 24 South. 439; Dodge v. Irvington Land Co., 158 Ala. 95, 48 South. 383, 22 L. R. A. (N. S.) 1100; Hornsby v. Tucker, 180 Ala. 423, 61 South. 928. One in possession of lands during coverture, claiming title, is prima facie seized in fee, and unless this is impeached or explained, is conclusively presumed to have title thereto. Therefore, this was sufficient for dower to attach. Steele v. Brown, 70 Ala. 235; Dodge v. Land Co., 158 Ala. 95, 48 South. 383, 22 L. R. A. (N. S.) 1100; Tilley v. Letcher, 203 Ala. 277, 82 South. 527. The possession of the widow to whom dower has been assigned may be tacked to that of her husband before his death, and her possession as life tenant inures to the benefit of the remaindermen. Reynolds v. Trawick, 201 Ala. 450, 78 South. 827; 21 C. J. 275; 2 C. J. 2. In ejectment, plaintiffs may show that defendants are not entitled to dispute the source of their title, because claiming through the same source, and in order to establish the fact may introduce in evidence deeds connecting defendant with such source. 21 C. J. 975; Stewart v. Ransom, 204 Ala. 589, 87 South. 90; Vidmer v. Lloyd, 184 Ala. 165, 63 South. 943. Adverse possession did not run against the plaintiffs during the life of the widow of Ransom G. Ray. Winters v. Powell, 180 Ala. 431, 61 South. 96; Vidmer v. Lloyd, supra. There was no presumption that the plaintiffs had the custody of the deed from Boulware to Ransom G. Ray, and the record of the deed was admissible. Allison v. Little, 85 Ala. 512, 5 South. 221. Statements made by a party in possession of land showing that he holds in subordination to the title of another are admissible. Wisdom v. Reeves, 110 Ala. 433, 18 South. 13.

Jas. W. Strother, of Dadeville, for appellee.

The petition for dower does not show that petitioner was married to deceased. It was inadmissible. Martin v. Martin, 22 Ala. 86; Code 1852, § 1361; Forrester v. Forrester, 38 Ala. 119. There was no error in rulings on the admissibility of documentary evidence.

THOMAS, J. The action is under the statute, and is in the nature of ejectment. The general affirmative charge, with hypothesis, was given at defendant's request, in writing. It is contended that the husband of the doweress and father of plaintiffs, Ransom G. Ray, had the possession of the lands sued for under claim of ownership from 1857 to the time of his death during the Civil War; that he went to the war and "never came back from the army"; that his wife and children were in the enjoyment of or in possession of the home and said land from the time said Ray went to the war and to the

time the same was set apart to the widow as dower in 1867.

[1, 2] The declarations of ownership by Mr. Ray while in possession of the land as to the nature, character, and extent of his holding were properly admitted in evidence. Smith v. Bachus, 195 Ala. 8, 70 South. 261. There was error in excluding the proposed testimony of the witness A. J. Ray that his mother in possession claimed the land as set apart to her as dower.

[3] The petition and proceedings thereon to the decree in 1867, setting apart dower to said Ray's widow, were offered in evidence and rejected on defendant's objection, and exceptions were duly reserved. These documents, if considered with the other evidence, tended (1) to identify the dower lands that are embraced in this suit; (2) to illustrate the nature and character of the possession of Mrs. Mary Jennings, née Ray; and (3) the character of the title and possession of her successors in interest or estate from the common source during the life of the said widow of Mr. Ray.

The rule declared in Pickett v. Doe ex dem. Pope, 74 Ala. 122, has been adhered to by this court. It is:

"The principle decided in the case of Broome v. King, 10 Ala. 819, and followed in several other cases (Price v. Talley's Adm'rs, 18 Ala. 21; Walker v. Fenner, 28 Ala. 367; Thrasher v. Ingram, 32 Ala. 645), as to the effect of a sale of the entire property by a tenant for life on the estate and rights of a vested remainderman, applies only to personal property, and the court declines to extend it to cases involving real property.

"The possession of land by a tenant for life cannot be adverse to the remainderman; and if he sells and conveys to a third person, by words purporting to pass the absolute property, the possession of the purchaser is not, and cannot be during the continuance of the life estate, adverse to the remainderman." Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 South. 197, 13 Am. St. Rep. 73; Kerr v. Nicholas, 88 Ala. 346, 6 South. 698; Gafford v. Strauss, 89 Ala. 283, 7 South. 248, 7 L. R. A. 568, 18 Am. St. Rep. 111; Gindrat v. Western Ry. of Ala., 96 Ala. 162, 11 South. 372, 19 L. R. A. 839; Bolen v. Hoven, 143 Ala. 652, 39 South. 379; Mitchell v. Baldwin, 154 Ala. 346, 45 South. 715; Lecroix v. Malone, 157 Ala. 434, 47 South. 725; Hall v. Condon, 164 Ala. 393, 51 South. 20; Winters v. Powell, 180 Ala. 425, 61 South. 96; Seaboard Air L. Ry. v. Banks, 207 Ala. 194, 92 South. 117; Harrison v. Sollie, 206 Ala. 284, 89 South. 562; Graham v. Graham, 205 Ala. 644, 89 South. 25; Kidd v. Browne, 200 Ala. 299, 76 South. 65; Dallas Compress Co. v. Smith, 190 Ala. 423, 436, 67 South. 289; Reynolds v. Trawick, 201 Ala. 449, 87 South. 335.

[4] The father and husband, in possession of the land in question under claim of title, or by exercising acts of ownership through himself or tenants, is presumed to have had title thereto before and at the time he went to the Civil War; and proof of that possession and claim of ownership while in possession makes out a prima facie right in his heirs at law, after the termination of the life estate, as against one who shows no title in himself or superior outstanding title in a third person—notwithstanding such a one may have color of title. Hornsby v. Tucker, 180 Ala. 418, 424, 61 South. 928; Dodge v. Irvington Land Co., 158 Ala. 95, 48 South. 383, 22 L. R. A. (N. S.) 1100; Higdon v. Kennemer, 120 Ala. 193, 24 South. 439; Doe, ex dem. Miller et al. v. Clayton, 73 Ala. 359; Brewer v. Avinger, 208 Ala. 411, 94 South. 590; West v. Chandler, 201 Ala. 260, 77 South. 674.

[5, 6] If Ransom G. Ray was beneficially seized of the land in possession during the coverture of the said Mary, he was prima facie seized in fee, and, unless this is impeached, or sufficiently explained as not being the fact, he is presumed to have had title to which the right of dower attached. Code 1907, § 3812; Tilley v. Letcher, 203 Ala. 277, 82 South. 527; Dodge v. Irvington Land Co., 158 Ala. 95, 48 South. 383; Steele v. Brown, 70 Ala. 235; King v. King, 61 Ala. 479; Glover v. Mitchell, 99 South. 905.[1] And the mere possession of the wife during the absence of the husband to the end of the Civil War or to his death, and thereafter to the assignment of dower, and her possession as doweress, and thereafter that of her successors in estate, will be tacked under the law; that is, the whole inures to the benefit of the remaindermen, who are plaintiffs in the instant suit. It follows that, if the combined possession (of the nature indicated) was for the period of ten years or more, and was of the nature required to ripen into adverse possession, it may support the title and claim of the remaindermen. They may rest a suit in ejectment on expiration of the life estate. Reynolds v. Trawick, 201 Ala. 448, 450, 78 South. 827. For possession that is adverse see Alabama authorities collected in 2 C. J. p. 51, § 2.

It may not be necessary to further speak of the tacking possession. However, in Haynes v. Boardman, 119 Mass. 414, 415, the court said of the privity in estate and the tacking possession of the life tenant for the remainderman:

"It is claimed that there is no such privity between the life tenant and the remainderman, because the latter in no sense claims under the former. But the answer is that both claim under the same will by one title. The disseisin, which was commenced by the testatrix, is continued by each in accordance with that title, and is referred by each only to the entry of the testatrix. There has been no loss of possession; no restoration of the seisin to the true owner; no new entry. The disseisin which commenced with the testatrix has been continuous in her devisees, and establishes her title by lapse of time. It is plainly distinguished from a case of successive entries and new

[1] Ante, p. 136.

disseisins by different and independent parties. It does not follow, because no act of the life tenant in disparagement of his title, and no disseisin of him, will be permitted to injure the remainderman, that an adverse possession maintained by the tenant, under his title, will not inure to the benefit of the former. The test of title is that there has been no interruption of possession, and no new entry required."

In Hickman v. Link, 97 Mo. 480, 10 S. W. 600, it is held that the widow is entitled to quarantine in the lands of the husband until the dower is assigned, and such possession by her as doweress will not be adverse to the heirs (see Yarbrough v. Yarbrough, 200 Ala. 184, 75 South. 932), that this right to retain possession until dower is assigned is the reason for the holding that the possession of the heirs may be tacked to that of the wife or widow, to constitute the period of the statute of limitation. 2 C. J. p. 89, § 83; Mills' Heirs v. Bodley, 4 T. B. Mon. (Ky.) 248; Atwell v. Shook, 133 N. C. 387, 45 S. E. 777.

[7, 8] It may be well to advert to the refusal to admit in evidence the record in the probate office (filed in office April 4, 1861) of the deed from James Boulware and wife to Ransom G. Ray, of date February 4, 1861. It is the rule in this jurisdiction that deeds made or land certificates issued more than 30 years before the trial, in the absence of circumstances to create suspicion, are ancient and self-proving documents, and it is not necessary that they should come from the proper source or even be exhibited to the court for inspection as to genuineness or age. McMillan v. Aiken, 205 Ala. 35, 42 (13), 88 South. 135; Jordan v. McClure Lbr. Co., 170 Ala. 289, 313, 54 South. 415. Where plaintiffs in ejectment were not the grantees under a deed which was nearly 50 years old, no presumption arose that they were in the possession or control thereof, and hence were entitled to introduce a certified transcript of the record to prove the deed. Wise v. Spears, 172 Ala. 8, 55 South. 114; Allison v. Little, 85 Ala. 512, 516, 5 South. 221.

The record offered shows that said deed was more than 60 years of age, and had been of record in the office of the judge of probate for more than that period. Such a deed is an ancient document within the rule, and the record of the same is admissible in evidence. McMillan v. Aiken, supra.

In Jordan v. McClure Lbr. Co., supra, it is said:

"In fact, this court has held that certified copies of documents which purport to be over thirty years of age and which have been recorded for twenty years are self proving. * * * These cases have been modified by the later case of O'Neal v. T. C. I. & R. R. Co., 140 Ala. 378, 37 South. 275; but not as to the proposition announced above. That case merely decides correctly that age cannot give validity to a document void on its face." Prince v. Prince, 188 Ala. 559, 66 South. 27. Messer-Johnson Realty Co. v. Security Savings & Loan Co., 208 Ala. 541, 94 South. 734.

[9] The plaintiffs had the right to introduce in evidence the title from Mrs. Ray to Craddock, his mortgage to American Freehold Land & Mortgage Company, evidence of the foreclosure and purchase by Joe Davis, the grantor of the defendant, as tending to show that the parties held from a common source and the extent and nature of the title and possession.

[10] The witness Stanford should have been permitted to answer the question, "Who went into the possession after Mrs. Ray?" It was relevant evidence tending to explain the nature or character of defendant's title and possession before and to the time of the death of the said widow.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.