## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 93-CA-00235-SCT

*OSCAR HAROLD ROBERTSON AND PAULINE ROBERTSON*

*v.*

*TOBY DOMBROSKI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/19/93 |
| TRIAL JUDGE: | HON. HOWARD L. PATTERSON JR. |
| COURT FROM WHICH APPEALED: | MARION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | PHILIP SINGLEY |
| ATTORNEY FOR APPELLEE: | GARLAND D. UPTON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 4/25/96 |
| MOTION FOR REHEARING FILED: | 5/8/96 |
| MANDATE ISSUED: | 8/15/96 |

**BEFORE DAN M. LEE, C.J., BANKS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Oscar Harold Robertson and Pauline Robertson (Robertsons) appeal from a judgment in favor of Toby Dombroski granting a partition by sale of certain lands in Marion County. From an adverse judgment, the Robertsons have appealed to this Court presenting three issues.

> **1) Whether the Robertsons' possession under an unrecorded deed was sufficient to give notice, or whether Appellee was a purchaser for value without notice of Appellants' claim of ownership.**

> **2) Whether the trial court erred, as a matter of law, in ruling that the Robertsons could not adversely possess the property as to claims of third parties where a life tenant had legal claim to the property during the same period of time.**

> **3) Whether the Robertsons adversely possessed the property pursuant to Section 15-1-7 of the Mississippi Code.**

### I. FACTS AND PROCEDURAL HISTORY

¶2. Toby Dombroski filed a complaint seeking a partition of certain lands in Marion County on December 6, 1991. The Robertsons, on February 21, 1992, filed an answer denying Dombroski had any interest in

the land which would allow a partition and counterclaimed that any interest Dombroski may have had was extinguished by adverse possession of the land by the Robertsons pursuant to Section 15-1-13 of the Mississippi Code.

¶3. Both parties deraign their title from a common source, being Nannie B. Robbins Whitfield (Whitfield). Whitfield acquired her title on April 20, 1963.

¶4. Dombroski deraigns his title from Whitfield, who died intestate on December 24, 1977. Her presumptive title passed by operation of law to Thomas L. Robbins and Jewell Robbins Oglesbee, as tenants-in-common, subject to only the claims of creditors through Whitfield's estate. Prior to entry of a final judgment, Thomas L. Robbins quitclaimed his one-half interest in the property to his wife, Ruth Buckley Robbins, January 16, 1978. This deed was recorded on January 17, 1978. On February 1, 1980, a final judgment was entered closing Whitfield's estate and holding that Thomas L. Robbins and Jewell Robbins Oglesbee were Whitfield's sole heirs-at-law.

¶5. Thereafter, on July 29, 1980, Ruth Buckley Robbins quitclaimed her one-half undivided interest in the property to Merle R. Willoughby. That deed was recorded on August 4, 1980.

¶6. On September 5, 1984, Merle R. Willoughby quitclaimed his one-half interest to Toby Dombroski. This deed was recorded on September 17, 1984. Dombroski paid $2,400 for the property.

¶7. The Robertsons begin the deraignment of their title with a warranty deed from Whitfield executed on June 23, 1972. This deed conveyed the land in question to the Robertsons as tenants by the entirety reserving unto the grantor "a life estate in and to the residence house and the cutilege [sic] thereto. . . ." The Robertsons did not record this instrument until February 2, 1978, after the death of Whitfield and after the conveyance and recordation of the conveyance from Thomas L. Robbins to his wife, Ruth Buckley Robbins.

¶8. The Robertsons gave Whitfield a deed of trust and a promissory note for $6,000 for the house. The deed of trust had no due date. The promissory note was due one year from execution. These documents were not recorded but remained in Whitfield's possession.

¶9. Robertson testified that the purchase price of the property was $8,500. He paid Whitfield a portion of the debt by giving her various goods and services equal to about $2,500 prior to the execution of the promissory note and deed of trust. At the time of the execution of the promissory note and deed of trust he owed $6,000. He testified another $1,150 was paid to Whitfield in the form of other goods, which left an outstanding debt of approximately $4,850. No part of the debt was paid in cash.

¶10. Prior to the death of Whitfield, and prior to the recordation of the Robertsons' deed, the Robertsons conveyed a life estate in the subject property to Jewell Oglesbee on October 20, 1977. This deed was not recorded until May 8, 1979, after the deed form Whitfield to the Robertsons' was recorded. After the death of Whitfield, Robertson tendered two cashier's checks to Thomas L. Robbins and Jewell Robbins Oglesbee, each in the amount of $2,422.13 . The check from the Robertsons to Thomas L. Robbins was returned because Thomas L. Robbins had already made a conveyance to his wife, Ruth Buckley Robbins. Dombroski testified that his purchase price was set at $2,400 because that was what Robertson owed on his outstanding debt to Whitfield's heirs.

¶11. Finally, Jewell Robbins Oglesbee quitclaimed her interest back to the Robertsons on September 26,

1983, which deed was placed of record on September 29, 1983.

¶12. A chain of title, diagraming these transactions, is attached as Appendix A. The Robertsons also claimed title to the land by adverse possession. While portions of the testimony are disputed, it is undisputed that Oscar Harold Robertson had kept and grazed cattle on the land in question since 1957. Toby Dombroski was aware of this fact. Dombroski admitted that all portions of the property which he had visited had been fenced, a pond was on the property, and that grass had been planted on the pastures. Further, Dombroski admitted he had checked the land records to see if Robertson owned the property because he had heard that Whitfield had conveyed the land to Robertson. Finally, Dombroski admitted that he had not paid taxes on the property every year since the conveyance in his favor, because, as he put it, "Each time I had gone to the Courthouse, and the taxes had already been paid on it." From the time Dombroski received his deed in 1984, until the trial date of January 15, 1993, Dombroski had paid taxes only two or three times, probably in 1985 and again in 1991.

¶13. Robertson testified that he: (1) cleared the land and planted grass on it; (2) grazed cattle on the land; (3) repaired damage to the property caused by Hurricane Camille; (4) built a fish pond on the property upon acquiring it and repaired it when the dam broke; (5) paid taxes since 1972, except for the years 1984 and approximately 1991; (6) frequently visited and made other improvements to the property.

¶14. Clifford Simmons, owner of neighboring property since 1936, stated that he often saw Robertson coming and going on the property and using the property by grazing cattle on the pastures, planting and harvesting hay and bushhogging it. He testified that he had not seen other people on the property, though he did not say that he "positively knew" that other people had not been on it.

## LAW

### I.

**Whether the Robertsons' possession under an unrecorded deed was sufficient to give notice, or whether Dombroski was a bona fide purchaser for value without notice.**

¶15. The chancellor in this case held that the Robertsons' failure to record their deed until after the death of Whitfield, and the vesting of title in her heirs, as well as the conveyance and recordation of a deed passing title from Thomas L. Robbins to Ruth Buckley Robbins, took the Robertsons out of the chain of title and rendered their deed null and void as to subsequent purchasers for value. As a general rule, the recording system would protect any subsequent purchaser for value without notice from the Robertsons' claim.

¶16. A conveyance which acknowledges payment or receipt of valuable consideration is prima facie evidence that the grantee therein was a bona fide purchaser for a valuable consideration without notice. *Rollings v. Rosenbaum*, 166 Miss. 499, 148 So. 384 (1933); *Burks v. Moody*, 141 Miss. 370, 106 So. 528, *suggestion of error overruled*, 141 Miss. 370, 107 So. 279 (1926); *Atkinson v. Greaves*, 70 Miss. 42, 45, 11 So. 688 (1892); *Hiller v. Jones*, 66 Miss. 636, 6 So. 465 (1889); *see*, *Mills v. Damson Oil Corp.*, 686 F.2d 1096, 1101-02 (5th Cir. 1982). The quitclaim deed from Thomas L. Robbins to Ruth Buckley Robbins states:

> FOR AND IN CONSIDERATION of the sum of TEN ($10.00) DOLLARS, cash in hand paid in hand and other good and valuable consideration, the receipt and sufficiency of all which is hereby

acknowledged. . . .

¶17. No evidence was adduced by the Robertsons at trial which attacked the consideration given by Ruth Buckley Robbins, nor was any evidence adduced to show she had actual knowledge of the Robertsons' outstanding claim. Without such evidence, this Court must conclude that Ruth Buckley Robbins was a bona fide purchaser for value without notice.

¶18. Having found that Ruth Buckley Robbins is a bona fide purchaser for value without notice, we proceed to the second principle. Where a subsequent purchaser takes title from a prior bona fide purchaser for value without notice, then the subsequent purchaser is entitled to all the protections the recording system offered his grantor, unless the subsequent purchaser had previously held the property subject to the adverse claims. *Southern Life Ins. Co. v. Pollard*, 247 Miss. 211, 222-24, 150 So. 2d 416, ___ (1963); *Lay v. Nutt*, 194 Miss. 83, 11 So. 2d 430 (1943); *Barksdale v. Learnard*, 112 Miss. 861, 73 So. 736 (1917); *Equitable Sureties Co. v. Sheppard*, 78 Miss. 217, 28 So. 842 (1900); *Price v. Martin*, 46 Miss. 489 (1872); *Fulton v. Woodman*, 54 Miss. 158 (1876); *Lusk v. McNamer*, 24 Miss. (2 Cushm.) 58, 59 (1852). Thus, Dombroski, has all the rights of his predecessor in title, Ruth Buckley Robbins. The recording system protects Dombroski's record title despite either actual notice by way of the Robertsons' physical possession of the property at the time of the execution of his deed, or being on inquiry notice by the fact that the Robertsons' deed was recorded before the recordation of the final judgment closing Whitfield's estate.

¶19. If the facts of this case revolved around record title alone, Dombroski should prevail under his status as a successor in interest to Ruth Buckley Robbins, who was apparently a bona fide purchase for value without notice.

## II.

**Whether the trial court erred, as a matter of law, in ruling that the Robertsons could not adversely possess the property as to claims of third parties where a life tenant had legal claim to the property during the same period.**

¶20. The chancellor, in the pertinent portion of his judgment, stated:

That Defendants could not legally claim that they adversely possessed the property in question during the lifetime of Grantor, Nannie B. Robbins Whitfield, whom they admit continued in possession until her death on December 24, 1977, under her life tenancy.

That Defendants also could not have claimed to adversely possess the property from the time that they gave life estate interest in the entire property to Jewell Robbins Oglesbee, on October 20, 1977, until at least September 26, 1983, when she Quit-Claimed all of her interest therein to Defendants, as they testified that she continued to reside thereon and have possession thereof during said period of time and even thereafter until her own death. [1]

Therefore, Defendants could not have legally begun the necessary period of time to establish adverse possession until at least September 26, 1983. And since this suit was filed by Plaintiff on December 6, 1991, and Defendants answer and cross-complaint for partition of property was filed on February 21, 1992, their [sic] could **not** have been sufficient adverse possession for the necessary 10

year statutory period of time.

¶21. The Robertsons claim the preceding language to be an incorrect statement of law. This Court reviews conclusions of law *de novo*. *UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.*, 525 So. 2d 746, 754 (Miss. 1987).

¶22. In *Williams v. Woodruff*, a remainderman daughter was living with her life-tenant mother on property over which they jointly exercised dominion and control. *Williams*, 374 So. 2d 233 (Miss. 1979). The mother received a void[(2)] warranty deed to the property on May 25, 1959. *Id.* The mother and her grantor lived together until the grantor's death sometime in July of 1966. *Id.* The mother then executed a warranty deed in the property to her daughter on September 27, 1966. *Id.* The mother died on November 2, 1968, at which time the daughter took exclusive possession of the property. *Id.* This Court stated:

> The sole question in the appeal is whether or not the fact that the life tenant, Beatrice Dale, by meeting her death on November 2, 1968, started appellee's adverse possession running on that date, and, therefore, less than ten years prior to appellants' suit. In other words, did the approximately two year life estate of the life tenant prohibit adverse possession from running as to appellee?

> Appellants contend that appellee's possession during the life of the life tenant did not constitute adverse possession as it was not "hostile and exclusive" against the entire world, including the life tenant.

> We cannot agree with appellants' contention. Admittedly there is a scarcity of authorities on this question. However, we find in 31 C.J.S., Estates, section 66, page 136, the following:

> **The possession of the life tenant may be adverse as against third persons so as to create a valid title by adverse possession in favor of the life tenant and the remaindermen or reversioner.**

> *See also Ray, et al v. Farrow*, 211 Ala. 445, 100 So. 868 (1924); *Munro v. Whitlow*, 54 C.A. 448, 201 P. 964 (1921); *Ryon, et al v . Commercial Bank, et al*, 219 S.W. 652 (Mo. 1920).

> . . . .

> As hereinbefore set out, Beatrice Dale received a warranty deed from her mother on May 25, 1959, and resided on the property with her parents until their death in July, 1966. Upon execution and delivery of the deed to appellee the mother continued living with appellee and according to the finding of the chancellor, abundantly supported by the evidence, the two [mother and daughter] continued to reside in the same home on the property, and jointly exercised dominion and control over the property. The hostile and adverse possession of the life tenant was undoubtedly for and on behalf of the daughter remainderman living with her. **The actions of both, acting jointly, were sufficient to create adverse possession from the time of the deed to the grantee until the mother's death, and, therefore, should be tacked on to appellee's adverse possession subsequent to her mother's death.**

*Id.* at 233 (emphasis added).

¶23. Thus, the chancellor erred as a matter of law when he held that adverse possession could not begin to run until such time as the life estates were extinguished. It is true the remainderman could not adversely possess against the life tenant. However, as to third parties the remainderman's possession during the existence of the life estate is hostile. Further, the life tenant's possession is hostile to third parties as well and is tacked to the remainderman's interest. Finally, the life estate of Whitfield only applied to the house and surrounding curtilage.

¶24. Under the authority of *Williams v. Woodruff*, we hold that the chancellor erred as a matter of law in concluding that the Robertsons' period of adverse possession could not begin until September 26, 1983, the date the outstanding life estate on the property was removed.

## III.

### Whether the Robertsons Adversely Possessed the Property under Section 15-1-7 of the Mississippi Code.

¶25. Numerous authorities state that in order to establish adverse possession of real property, the claimant must prove by clear and convincing evidence that his possession was: "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Thornhill v. Caroline Hunt Trust Estate*, 594 So. 2d 1150, 1152-53 (Miss. 1992) (citations omitted).

¶26. The Robertsons' uncontradicted testimony established that Mr. Robertson (1) cleared the land and planted grass on it; (2) grazed cattle on the land; (3) repaired damage to the property caused by Hurricane Camille; (4) built a fish pond on the property upon acquiring it and repaired it when the dam broke; (5) paid taxes since 1972, except for the years 1984 and 1991; and (6) frequently visited the property and made other improvements to it. Moreover, Dombroski admitted that he had only paid taxes on the property for two years since the conveyance to him. Dombroski was also aware that grass was planted and cattle were grazed on the pastures.

¶27. Dombroski submits that these acts were not enough to raise the flag of adverse possession. We respectfully disagree. The facts of this case are similar to *Roy v. Kayser*, 501 So. 2d 1110 (Miss. 1987), where "the [adverse possessors] maintained the fence, planted a garden, raised crops, pastured cattle, and cut timber upon their holdings." *Roy v. Kayser*, at 1112. "Such acts were sufficient to fly the flag over the land and put the true owner upon notice that his land was held under an adverse claim of ownership." *Id.* (citations omitted).

¶28. In this case, the acts of adverse possession occurred prior to the vesting of record title in Dombroski and were sufficient to put him and his predecessors on notice of the adverse claim.

## IV. CONCLUSION

¶29. We find the following operative facts and law to be controlling in this case.

## A.

¶30. Record title to the lands in question stems from the acquisition of the property by Nannie B. Robbins

Whitfield in 1963. Her original title was never challenged by any of the parties.

## B.

¶31. Whitfield conveyed all of the lands in question to the Robertsons, reserving a life estate to the house and surrounding curtilage, on June 23, 1972. Though this deed was not recorded until February 2, 1978, the possession by the life tenant (Whitfield) and the remaindermen (the Robertsons), was under claim of ownership; actual or hostile; open, notorious and visible; continuous and uninterrupted; exclusive; and peaceful. The prior possession by Whitfield commenced in 1963. Though her deed to the Robertsons was unrecorded, it was a binding contract between Whitfield and the Robertsons. By operation of law, the life estate in the house and curtilage was extinguished upon the death of Whitfield, thereby merging complete title in the subject lands in the Robertsons.

## C.

¶32. Since Whitfield had previously alienated her title to the lands in question, Thomas L. Robbins and Jewell Robbins Oglesbee took no title to the subject lands upon the intestate demise of Whitfield. The authenticity of this instrument was not challenged below. Thus, the subsequent chain of title, absent possession, into Dombroski, must fail.

## D.

¶33. The Robertsons' conveyance of a life estate in the subject land to Oglesbee in 1977 does not defeat their ownership of the lands in question. The record establishes that Oglesbee never went into possession of any part of the subject lands; that she did not record her deed until 1979; that she did not challenge the Robertsons' use and possession of the lands for the six years in which she held her unrecorded life estate; and that she quitclaimed any interest she had back to the Robertsons in 1983.

¶34. We must therefore reverse the lower court and find good title to the lands in question to be vested in the Robertsons.

¶35. **REVERSED AND RENDERED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR.**

## APPENDIX A

4/20/63 - Nannie B. Robbins Whitfield

6/23/72 - Warranty deed executed (reserved life estate in house & cutilege [sic] to grantor) to Oscar Harold Robertson & Pauline Robertson

10/20/77 - conveyance of life estate from Robertsons to Jewell Oglesbee

12/24/77 - death of Nannie B. Robbins Whitfield (intestate) Thomas L. Robbins Jewell R. Robbins (½ undivided interest)

1/16/78 - Quitclaim to Ruth Buckley Robbins

1/17/78 - Robbins' deed is recorded

2/2/78 - Robertsons' deed is recorded

5/8/79 - Oglesbee's life estate deed is recorded

2/1/80 - Final Judgment closing Whitfield estate

7/29/80 - Quitclaim to Merle R. Willoughby

8/4/80 - Willoughby's deed is recorded

9/5/84 - Quitclaim to Toby Dombroski

9/17/84 - Dombroski's deed is recorded

9/26/83 - Quitclaim to Oscar Harold Robertson & Pauline Robertson

9/29/83 - Robertsons' deed is recorded

Toby Dombroski (THE PRESENT) Oscar Harold Robertson & Pauline Robertson

1. The chancellor's finding that the Robertsons' testimony that Jewell Robbins Oglesbee resided on the tract in question from the granting of her life estate and thereafter until her death is manifestly erroneous. The only testimony on this topic reveals that Mrs. Oglesbee never lived in the house on the property or exercised any indicia of ownership pursuant to her life estate.

2. The deed was void due to the fact that only one of her married parents had executed the deed. *Williams*, 374 So. 2d at 233-34.