852 So.2d 57 (2002)
Pete J. NOSSER, III, Daria Nosser Hood, Paul W. Nosser, David J. Nosser and Lee Anne Nosser, Appellants/Cross-Appellees,
v.
B.P. BUFORD and Buford Partners, L.P. and B.P. Buford and Buford Partners, L.P., Appellees/Cross-Appellants,
v.
FIRST BANK, Appellee/Cross Appellee.
No. 2001-CA-01243-COA.
Court of Appeals of Mississippi.
December 3, 2002.
Rehearing Denied March 18, 2003.
Certiorari Denied August 7, 2003.
*58 Landman Teller, Jr., W. Briggs Hopson, III, Vicksburg, attorneys for appellants.
Dennis L. Horn, Madison, David M. Sessums, Vicksburg, attorneys for Appellees.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
IRVING, J., for the court.
¶ 1. Pete J. Nosser, III, Daria Nosser Hood, Paul W. Nosser, David J. Nosser and Leigh Ann Nosser (the Nossers) appeal from a final judgment, rendered in the Chancery Court of Warren County by a special chancellor, which (1) dismissed their claim for adverse possession to a tract of land also claimed by B.P. Buford and Buford Partners, L.P. (Buford), and (2) established the boundary line between the Nossers' and Buford's property, including the location of a road as it related to the boundary of the Nossers' and Buford's property. Buford filed a cross-appeal from that portion of the final judgment which dismissed their claim against First Bank for indemnity of any loss suffered as a result of the Nossers' action against them, including the cost of their defense of the Nossers' claim.
¶ 2. The Nossers assert that the trial court erred in finding that they failed to establish their claim of adverse possession, in finding that B.P. Buford was not precluded from asserting legal title to the disputed tract, and in accepting inferior evidence for the establishment of the location *59 of Freeman Road, a road common to both the Nossers' and Buford's property.
¶ 3. Buford assigns error to the trial court in excluding evidence of the Nossers' recognition of First Bank's superior title, in excluding evidence of the Nossers' attempt to purchase the disputed property from First Bank, in excluding the testimony of William Shappley, a Vicksburg attorney, and in dismissing their claim for indemnity against First Bank.
¶ 4. Finding no error, we affirm the trial court on both the direct and cross-appeal.

FACTS
¶ 5. The Estate of Pete J. Nosser, Jr., by its executors, Ouida W. Nosser and Pete J. Nosser, III, and the Pete J. Nosser Testatmentary Trust, by its trustee, Ouida W. Nosser, filed in the Chancery Court of Warren County a petition to remove a cloud on their title by Buford and to confirm title in them to a 2.1 acre tract of land.[1] The Nossers claimed record title as well as title by adverse possession. Alternatively, they sought a judgment against Buford, under the theory of unjust enrichment, for improvements they had allegedly made to the property. Buford answered the Nossers' complaint, denied the material allegations of the complaint regarding the Nossers' claim of ownership by record title and by adverse possession, and counterclaimed for confirmation and quieting of their title against the Nossers.
¶ 6. After being sued by the Nossers, Buford demanded that First Bank, their predecessor in title, provide them a defense to the Nossers' lawsuit and indemnify them for any loss suffered as a result of the Nossers' lawsuit. First Bank responded by filing an action against Buford for a declaratory judgment that First Bank owed Buford neither a defense to the Nossers' action nor an indemnification for any loss occasioned by the Nossers' suit. The First Bank action was consolidated with the Nosser/Buford action.
¶ 7. Prior to 1981, W.J. Runyon Jr. was the owner of all of the land in controversy. On June 8, 1981, Runyon executed a deed of trust to First Bank of Southwest Mississippi (predecessor of First Bank). The Runyon/First Bank conveyance involved three parcels of land all having metes and bounds descriptions. A portion of the western boundary of the first parcel was described as the center line of old Freeman Road.
¶ 8. On July 30, 1981, Runyon conveyed the following parcel of land to Pete J. Nosser, Jr.:
Part of Section 5, Township 16 North, Range 4 East, Warren County, Mississippi, described as beginning at a point on the East right of way line of Highway No. 61 Bypass, at Station 156 + 00 of the East lane of said Highway, thence along the right of way turn out to Station 2 12.3 of Bowie Road North 21 degrees 24 minutes East, 234.5 feet to the South right of way line of said Bowie Road, thence North 89 degrees 23 minutes East, 300.0 feet to Station 5 + 12.3 of said road, thence leave said right of way and run South 16 degrees 00 minutes West, 300.0 feet, thence South 987 degrees 32 minutes West, 304.7 feet to the East right of way line of said Highway 61 Bypass East Lane at Station 155 + 20 of said Highway, thence along said right of way line North 01 degree 07 *60 minutes East, 80.0 feet to the point of beginning, containing 2.1 acres.
¶ 9. First Bank foreclosed its deed of trust, thereby acquiring title to all land described in the Runyon/First Bank deed of trust. Title was acquired by a corrected trustee's deed, dated November 15, 1988. On December 10, 1996, First Bank executed a special warranty deed to B.P. Buford conveying to him all of the property acquired by First Bank pursuant to the trustee's deed for the foreclosed Runyon/First Bank deed of trust. On January 16, 1998, B.P. Buford conveyed the same property to Buford Partners, L.P., a limited partnership.
¶ 10. After a hearing on the merits of the Nossers' complaint, Buford's counterclaim and First Bank's complaint for a declaratory judgment, the special chancellor (1) dismissed with prejudice the Nossers' claim for adverse possession of the subject property and their claim for unjust enrichment, (2) established the location of Freeman Road, with respect to the Buford's property and the boundary line between Buford's and the Nossers' property, as designated and set forth in the 1997 plat of Gee and Strickland, Inc., (3) granted First Bank a declaratory judgment that it owed Buford neither a defense against the Nossers' claim nor indemnity for any loss which Buford might suffer as a result of the Nossers' action, and (4) dismissed with prejudice Buford's counterclaim against the Nossers.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 11. This Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong or applied an erroneous legal standard. Morgan v. West, 812 So.2d 987, 990(¶ 7) (Miss.2002) (citing Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996)). In matters that are questions of law, this Court employs a de novo standard of review and will reverse only for an erroneous interpretation or application of the law. Id. at 990(¶ 8) (citing Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss.1992)).

Adverse Possession
¶ 12. The Nossers first allege that the trial court incorrectly applied Mississippi adverse possession law as it pertains to the facts of this case. In order to establish adverse possession, the claimant must show that the possession was: "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Robertson v. Dombroski, 678 So.2d 637, 642 (Miss.1996) (citing Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-53 (Miss.1992)). The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. Id.
¶ 13. The principle is accepted that both the quality and quantity of possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land. Johnson v. Black, 469 So.2d 88, 90 (Miss.1985). Adverse possession of unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. Id. at 90 (citing Kayser v. Dixon, 309 So.2d 526, 529 (Miss.1975); McCaughn v. Young, 85 Miss. 277, 292-293, 37 So. 839, 842 (1905)). The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are *61 held under an adverse claim of ownership. Id. at 90-91, 37 So. 839 (citing Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 687, 16 So.2d 24, 25 (1943)).
¶ 14. The Nossers argue that their acts of hunting, cutting firewood, removing dirt, paying taxes, and giving permission to political candidates to place signs on the property were sufficient acts to demonstrate the Nossers' actual control of the property. In 1993, the Nossers conducted major leveling operations on the land. From 1993 through 1996, several newspaper articles were published in The Vickburg Post, a local newspaper, concerning the Nossers' planned building operations. The Nossers assert that the character and duration of these acts demonstrate they should prevail on their adverse possession claim.
¶ 15. After carefully analyzing the Nossers' acts of adverse possession and the qualities and characteristics of those acts, the chancellor found that the Nossers' sporadic cutting of firewood by members and others on unspecified dates, their shoveling of dirt and its removal by pickup truck on unspecified dates, bush hogging on unspecified dates in unspecified areas, squirrel hunting by Rusty Nosser numerous times from 1982 to 1984 and by David Nosser five or six times a year from mid-October to mid-November of 1981 through 1985, and the Nossers' granting of permission for election signs to be placed on the land in election years were not sufficient acts to constitute adverse, hostile, open, notorious, visible, continuing and exclusive possession contemplated by statute. The chancellor also found that the property in controversy was a loess bluff. He determined that the elevation of the bluff increased from south to north with the top of the bluff on the north end being approximately 30 to 40 feet above Bowie Road and Highway 61 Bypass.
¶ 16. Paul Nosser, David Nosser, and William Allen Hood all testified that the bluff was elevated and heavily wooded. They also admitted that most of their activities on the property from 1981 through 1992 would not have been seen by the public. These acts, by their quantity and character, would not be sufficient to fly the Nossers' flag over the lands and put Buford, the record title holder, on notice that his land was being held under an adverse claim of ownership.
¶ 17. The Nossers also assert that their payment of taxes on the property from 1981 until the date of the trial was a sufficient act of adverse possession. However, payment of taxes is simply one incident to possession and whether an adverse possessor has paid property taxes on the land in controversy is not dispositive of the claim of ownership. Hearn v. Shelton, 762 So.2d 792, 795(¶ 7) (Miss.Ct.App.2000) (citing Houston v. U.S. Gypsum Co., 652 F.2d 467, 474 (5th Cir.1981)); see also Leavenworth v. Reeves, 106 Miss. 722, 731, 64 So. 660, 663 (1914).
¶ 18. The Nossers' 1993 major leveling operations on the property were sufficient acts of adverse possession. However, from 1993 to the date of the filing of the Nossers' lawsuit is only five years, far short of the ten years required to claim title by adverse possession. Therefore, we affirm the chancellor's dismissal of the Nossers' adverse possession claim.
Defendant's Knowledge of Plaintiff's Adverse Possession
¶ 19. The Nossers also contend that Buford should be precluded from any claim of ownership to the disputed land because Buford had actual knowledge of the Nossers' claim of ownership when he purchased the land. Citing Hollingsworth as authority, the Nossers argue that they had both "record title claim" and were in *62 actual possession of the disputed land. According to the Nossers, simple inquiry by B.P. Buford at the time he purchased the land would have apprized him of their claim to the land. Therefore, the Nossers argue that Buford should have done something to oust them from the property and, because he failed to do so, he should be precluded from asserting a claim to the subject property.
¶ 20. In Hollingsworth, the Hollingsworths received a deed to property but failed to promptly record their deed. Hollingsworth, 609 So.2d at 423. Approximately a year later and after the death of the grantor of the Hollingsworths' deed, the descendants of the Hollingsworths' grantor conveyed a deed of trust to the Bank of Mississippi which included eighteen acres of the land previously deeded to the Hollingsworths. Id. The bank immediately recorded its deed of trust, and the Hollingsworths recorded their deed over a year later. Id. When the bank moved to foreclose on its deed of trust, the Hollingsworths filed for an injunction alleging that at all times after they received their deed to the land, they "were in open and obvious actual occupancy and possession" of the eighteen acres. Id. The bank argued that because it filed its deed of trust prior to the Hollingsworths' filing their warranty deed, the Hollingsworths received constructive notice that the bank had a deed of trust lien on the subject property. Id. The bank reasoned that the Hollingsworths should be precluded from asserting a claim to the disputed eighteen acres.
¶ 21. The trial court found that the Hollingsworths had enclosed the property in a fence prior to the bank's deed of trust being recorded. Id. The court also determined that the fence was visible to any one making a physical inspection of the premises. Id. Consequently, the trial court held that, because the bank failed to make a reasonable inspection of the premises and a reasonable inquiry to determine the land's ownership, the bank was barred from claiming any benefits under the recording statute. Id. As a result, the trial court canceled the bank's deed of trust lien on the property. Id. The trial court's ruling was upheld on appeal. Id. at 425-26.
¶ 22. Hollingsworth is distinguishable on the facts. The sole issue in Hollingsworth was whether the Hollingsworths' indicia of ownership (i.e. their construction of a fence around the disputed property) was sufficient to put the bank on notice of the Hollingsworths' assertion of ownership even though the Hollingsworths had failed to record their warranty deed prior to the bank's recording its deed of trust. The question here is whether Buford's knowledge, if any, of the Nossers' acts of adverse possession, is sufficient to defeat Buford's claim of ownership to the disputed property notwithstanding the fact that the acts of adverse possession have not persisted for the statutory requirement of ten years. An affirmative answer would have the effect of shortening the period for adverse possession from a period of ten years to when the record titleholder first learns of acts adverse to his exclusive ownership. Hollingsworth is further distinguishable in that here, unlike in Hollingsworth, First Bank's deed of trust was granted and filed before, not after, the conveyance to the Nossers. Therefore, Hollingsworth is adverse to their position. Had the Nossers made a reasonable inquiry of the county deed of trust records, they would have discovered First Bank's superior claim.
Establishment of the Location of Freeman Road
¶ 23. The Nossers' final issue is whether the chancery court erred in its use of "inferior evidence" to establish the location of Freeman Road. Both parties concede *63 the importance of establishing Freeman Road to settle the present dispute.
¶ 24. Evidence must be sufficient to support a chancellor's determination of boundary lines between properties. Farris v. Thomas, 481 So.2d 318, 319 (Miss. 1985).
¶ 25. The Nossers introduced a plat of the disputed land. The plat was prepared in 1980 by Buford Edwards, a registered land surveyor. The plat did not show Freeman Road. The Nossers also presented two witnesses, William Allen Hood and Paul W. (Rusty) Nosser, to establish the location of Freeman Road. Hood testified that he entered the disputed land two months after Pete Nosser, Jr. bought the property. He also claimed to recognize the property lines of the land. However, Hood admitted he did not have the Edwards plat with him at that time. Rusty Nosser testified that he had entered the property from Freeman Road, and as he walked North on the Road, a fence was on his left. The Nossers also presented Hugh Logue, a resident of Freeman Road. Logue testified that Freeman Road ran north and south, but Logue lacked knowledge as to the specific path the road took after passing his home.
¶ 26. The Bufords presented Joe Strickland, a licensed Mississippi surveyor. Strickland performed a survey of the disputed area and offered testimony as to the location of Freeman Road. Strickland's survey was based on right of way plans for Bowie Road, right of way plans for U.S. Highway 61 North, and county land records. Noting that the Nossers had made no attempt the obtain their own surveyor, the chancellor found the Strickland survey sufficiently credible to determine the location of Freeman Road. We find the chancellor's findings supported by sufficient and credible evidence.

Buford's Cross-Appeal
¶ 27. Our disposition of the issues on direct appeal has mooted all issues on the cross-appeal except Buford's contention that the trial court erred in not requiring First Bank to provide him with a defense of the litigation. The trial court determined that Buford received title from First Bank by special warranty deed and that there had been no breach of that warranty. We find nothing wrong with this finding as it is fully supported by the evidence. Accordingly, we affirm the trial court's finding that First Bank has no liability for Buford's defense and owes no indemnity to Buford.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED AS TO DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Subsequent to filing the lawsuit, Ouida Nosser died, and Pete J. Nosser, III, Daria Nosser Hood, Paul W. Nosser, David J. Nosser, and Leanne Nosser, all heirs of Pete J. Nosser and beneficiaries of the Nosser estate, were substituted in the place of the Estate of Pete J. Nosser, Jr.