ISHEE, J.,
for the Court.
¶ 1. Copiah Forest Products, Inc. (“Copi-ah”) successfully brought suit for adverse possession against Charles R. McLendon and Anne R. McLendon (“the McLen-dons”) for a disputed strip of land, though the trial court dismissed its trespass claim against the McLendons. Aggrieved by the decision, the McLendons appeal. Finding no error, we affirm.
FACTS
¶ 2. The McLendons hold record title to a sixty-five-foot-wide, 1,060.5 foot-long (1.53 acres in total) strip of land in Copiah County, adjacent to a forty-acre tract which the McLendons also own. On December 22, 1992, Copiah purchased a tract of land adjacent to the McLendon tract with a common border with the McLendon tract measuring 1,060.5 feet. Prior to Co-piah’s purchase of the land, it had been owned by Ayers Bishop since 1950. There was no distinguishable boundary line dividing the Bishop/Copiah property from the McLendon property until the mid 1980s, when Charles R. McLendon built a fence along the western boundary of the disputed strip. Though an exact date of the building of the fence could not be discerned, it was in place at least prior to June 25, 1986. Once the fence was built, Bishop and the McLendons treated the fence line as the actual boundary line between the tracts. On June 25, 1986, Charles R. McLendon made a timber conveyance, specifically stating in the timber deed that the area to be cut lay within the fenced area. All witnesses at trial agreed that the timber was only cut up to the fence coming from the west. On April 22, *262 1987, Bishop conveyed his timber to Copi-ah, and all witnesses at trial agreed that the timber was to be cut up to the fence coming from the east. Additionally, Charles R. McLendon stated at trial that he was aware that Copiah had cut timber up to the fence coming from the east, but did nothing about it. Consequently, Copi-ah asserted at trial that adverse possession began, at a minimum, on or about April 22, 1987. After the conveyance of the Bishop property to Copiah in 1992, Copiah continued to use the land as timberland by burning the property, putting in a fire lane, and planting trees in 1995, chopping timber on the property, spraying poison to kill undesirable plant life, and periodically inspecting the land.[1] In 2002, Charles R. McLen-don went to' the office of Craig Pyron, one of Copiah’s owners, and asked him to sign an easement allowing Southwest Mississippi Electric Power Association (“SWEPA”) to run a power line down the fire lane immediately adjacent to the fence on the east side. Copiah refused this easement. In September 2002, the McLendons had SWEPA bulldoze and clear a sixty-five-foot strip of land running down the east side of the fence and install a power line on that strip. When Copiah discovered this, it filed the present lawsuit for title by adverse possession, including a trespass claim against the McLendons.[2] It is not disputed that Copiah’s sole claim to the disputed strip of land is through adverse possession. The trial court found by clear and convincing evidence that Copiah and Copiah’s predecessor, Ayers Bishop, had obtained a valid fee simple title to the disputed strip of land by adverse possession for a period of more than ten years in full compliance with Mississippi Code Annotated § 15-1-13 (Rev.2003) and applicable Mississippi case law. Specifically, the court found that Copiah and Bishop’s adverse possession was actual, open, notorious, continuous, uninterrupted, visible, hostile, exclusive, under claim of ownership and peaceful for a period of more than ten years, in accordance with Mississippi law. The court dismissed the trespass claim against the McLendons with prejudice. Aggrieved, the McLendons appeal, asserting: (1) that Copiah did not prove by clear and convincing evidence all six elements necessary to establish entitlement by adverse possession; and (2) that the trial court erred by failing to rule that the necessary ten-year period of adverse possession had not, as a matter of law, been satisfied.
STANDARD OF REVIEW
¶ 3. This Court will not disturb a chancellor’s findings of fact when supported by substantial evidence, unless there is a reasonable certainty that the chancellor was manifestly wrong, applied an erroneous legal standard, or abused his discretion. Nosser v. B.P. Buford, 852 So.2d 57, 60(¶ 11) (Miss.Ct.App.2002) (citing Morgan v. West, 812 So.2d 987, 990(¶ 7) (Miss.2002)). When dealing with questions of law, this Court applies a de novo standard and will only reverse for erroneous interpretation or application of law. Morgan, 812 So.2d at 990(¶ 8) (citing Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss.1992)).
ISSUES AND ANALYSIS
I. Whether Copiah met its burden of proof in establishing entitlement by adverse possession.
¶ 4. In a suit for title by adverse possession, the claimant has the burden of *263 proving by clear and convincing evidence that the possession was: “(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.” Robertson v. Dombroski, 678 So.2d 637, 642 (Miss.1996) (citing Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-53 (Miss.1992)). “[B]oth the quality and quantity of the possessory acts necessary to establish a claim for adverse possession may vary with the characteristics of the land.” Nosser, 852 So.2d at 60(¶ 13) (citing Johnson v. Black, 469 So.2d 88, 90 (Miss.1985)). The polestar question is whether the possessory acts by the adverse possessor sufficiently put the record title holder on notice that the property is held under an adverse ownership claim. Id. (citations omitted).
¶ 5. In the case sub judice, there was substantial evidence supporting each of the above elements. The record showed evidence that the McLendons built a fence on the western edge of the disputed strip, and that Copiah later, in 1987, cut timber all the way up to that fence coming from the eastern side. There was further evidence in the record that Charles R. McLendon was aware of the cutting of that timber. Furthermore, it was stipulated at trial that the McLendons had record title to the property at the time that timber was cut. There was evidence that Copiah cut this same strip of land again later. There was further evidence that Copiah burned vegetation, installed a fire lane around the perimeter of the property, replanted trees, and sprayed chemicals in the area by helicopter. As the chancellor stated below, these things certainly rise to the level of being open, notorious and visible. Furthermore, the fact that these actions were taken despite the fact that the McLendons held record title at all pertinent times certainly shows that the actions were hostile.
¶ 6. As for being under claim of ownership, the activity on the land as early as 1987, when Bishop still owned the land, demonstrates that both Copiah and its predecessor, Bishop, exercised claims of ownership so as to put the McLendons on notice. Furthermore, the deed conveying the Bishop property to Copiah contained a coverall clause which stated, “It is further the intention of the Grantor to convey all property he owns in Section 36, Township 10 North, Range 6 Easy, Copiah County, Mississippi.” The chancellor stated in his ruling that this clause “contemplates ownership of something over and above that described in the actual deed.” Consequently, we cannot say that the chancellor lacked a substantial evidentiary basis in finding that the property was under claim of ownership by Copiah.
¶ 7. As to exclusivity, peacefulness, continuity and uninterruptedness, the chancellor stated, and we agree, that there was no evidence whatsoever of “any interruption in the activity of Mr. Bishop on the property at least since 1987 when the timber was cut by Copiah Forest Products.” Further, there was no evidence that the possession was not peaceful and continuous, as well as exclusive. The chancellor further stated that any utilization of the property by the McLendons was simply permissive, as exemplified by Charles R. McLendon’s testimony concerning an agreement between he and Craig Pyron that McLendon would maintain the fire lane around the property for hunting purposes.
¶ 8. As to the ten-year time period requirement, Mississippi Code Annotated § 15-1-13(1) (Rev. 2003) states, in pertinent part:
Ten (10) years’ actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by *264 occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
Copiah, at the behest of Ayers Bishop, was cutting timber on the disputed strip as early as 1987. The rule of “tacking” as applied to adverse possession clearly allows the time period the property was adversely possessed by Bishop to combine with the time it was adversely possessed by Copiah in order to meet the statutory time period, as the parties were in privity. See Buford v. Logue, 832 So.2d 594, 606(¶ 43) (Miss.Ct.App.2002) (citing Rutland v. Stewart, 630 So.2d 996, 999 (Miss.1994)). Because there was evidence that the McLendons were aware of adverse activity on the disputed land as early as 1987, we find that there was sufficiently substantial evidence to support the chancellor’s finding of satisfaction of the time period element.
¶ 9. We have been presented with no meritorious arguments that the chancellor’s decision lacked a substantial eviden-tiary basis, was based on an abuse of discretion, was manifestly wrong, or applied an erroneous legal standard. As a result, we affirm the decision of the chancery court.
II. Whether the trial court erred in its ruling concerning the ten-year time period necessary for adverse possession.
¶ 10. For the reasons discussed above, this assignment of error is without merit.
¶11. THE JUDGMENT OF THE CHANCERY COURT OF COPIAH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR.

. The extent of Copiah's burning and chopping were contested at trial.

. SWEPA was originally a co-defendant, but settled with Copiah prior to trial.