# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00959-COA

LAVERN J. SMITH, HELLENA INGRAM, SUSIE        APPELLANTS
JOHNSON, CECIL JOHNSON, JR., MARION
GROTT AND ELLENA LEWIS, HEIRS-AT-LAW
OF ETHEL LEE JOHNSON, DECEASED,
HEIRS-AT-LAW OF DEMETRICA JOHNSON,
DECEASED, AND HEIRS-AT-LAW OF RODNEY
JOHNSON, DECEASED

v.

TYRONE R. ANDERSON, RODNEY JOHNSON,        APPELLEES
JR., DEONE JOHNSON AND TYRONISHA J.
SEABROOKS

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2022 |
| TRIAL JUDGE: | HON. ROBERT GEORGE CLARK III |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | EDNA FAYE JONES-STRINGER |
| ATTORNEYS FOR APPELLEES: | KATHERINE BARRETT RILEY |
| | SARAH STERLING ALDRIDGE |
| | BRANDI RATLIFF HAMILTON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 12/03/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND EMFINGER, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. This appeal concerns a dispute among cousins over 159 acres (the subject property) owned by a family elder, Sam Johnson, until his death in 1984. Sam's last will and testament provided that upon his death, the subject property was to be devised into a trust and administered by two designated trustees—Sam's sister, Ethel Johnson, and Ethel's daughter, Hellena Henry (now Hellena Ingram). The subject property was to remain in the trust for

twenty years and then revert to Sam's heirs—his two sons (Tyrone Anderson and Rodney Johnson Sr.)[1] and his grandchildren (Rodney Johnson Jr., Deone Johnson, and Tyronisha Johnson Seabrooks)—in equal shares.

¶2. In 2018, Sam's heirs (the Plaintiffs) filed a complaint to quiet and confirm title to the subject property with the Holmes County Chancery Court.[2] However, several of Ethel's children—Lavern Smith, Susie M. Johnson, Cecil Johnson Jr., Marion Grott, Hellena Ingram, and Ellena Lewis (the Defendants)—claimed they had title to the subject property by adverse possession because they had assisted Ethel in maintaining the property and paying the taxes since 2004.[3] Another one of Ethel's children, Brenda Johnson, filed a separate answer and counter-complaint (purportedly on behalf of herself *and* her siblings), alleging several affirmative defenses and claiming Ethel's heirs had title to the property.

¶3. The chancery court entered a final judgment on May 13, 2022, finding the Plaintiffs were record title owners of the subject property and dismissing the Defendants' claim of

---

[1] Tyrone and Rodney Sr. are half-brothers. According to a family member, the family learned of Tyrone when Sam's will was probated.

[2] The complaint noted that the real property consists of three parcels in the 2017 Holmes County land rolls: parcel nos. 0153600500, 0153600700, and 0153600501. Only 154 acres of the subject property are actually at issue in this case. In the complaint to quiet title, the Plaintiffs purposefully carved out 4.92 acres of the subject property (assessed with parcel number 0153600501), which contains a house that was occupied by their cousin Demetrica Johnson until her death in 2016. This exception was included in the complaint because the lessee of the subject property wanted to purchase the subject property minus that specific parcel. Therefore, we will only reference the 4.92-acre parcel when necessary for clarity.

[3] Ethel died in 2011.

adverse possession. The Defendants filed a motion to reconsider, which the court denied. On appeal, we find no merit to the Defendants' claims of error, and we affirm the chancery court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶4. On November 21, 1984, Sam Johnson (father and grandfather to the Plaintiffs) died testate.[4] His last will and testament left 159 acres of real property in Holmes County, Mississippi, to be held in a twenty-year trust overseen by the trustees, Ethel and Hellena, who were also appointed as the joint executrixes of the will.[5] The will granted the trustees "full power to rent, lease, farm, etc. as they see fit."[6] Sam's will also expressed his "desire that the trustees allow [his] two sons, Tyron[e] Anderson Johnson and Rodney Johnson to farm all my land, if they so desire." Upon the expiration of the trust, the property was to revert to Tyrone, Rodney Sr., and Rodney's children (Rodney Jr., Deone, and Tyronisha) to "share and share alike."

---

[4] Sam's last will and testament was executed on January 14, 1983. His will was admitted for probate, and the chancery court entered a judgment granting letters testamentary to Ethel and Hellena on December 29, 1984. The estate was closed in 1987, at which time Sam's grandchildren were minors.

[5] Two of Ethel's daughters, Demetrica Johnson and Brenda Johnson, were listed as alternate joint executrixes. They were also bequeathed $1,000 each, along with Tyrone, Rodney Sr., Rodney Jr., Deone, and Tyronisha.

[6] Under the will's terms, both Ethel and Hellena were to be paid $300 "annual[ly] for managing" the subject property. If any profits remained after the payment of taxes and expenses of property upkeep, those profits were to be paid to his designated heirs, "not to exceed Five Hundred Dollars ($500.00) each."

¶5.     In the mid-1990s, Webb O'Reilly began leasing the property from Ethel (who was acting on behalf of the Sam Johnson Trust) for agricultural purposes.[7]  After Ethel died in 2011, her daughter Demetrica took over the duties of collecting rent from O'Reilly and paying the property taxes until her death in 2016.  Shortly after Demetrica died, O'Reilly contacted one of the Defendants and expressed his interest in purchasing the subject property (minus the 4.92-acre parcel).[8]  After conversations between some of the Defendants and some of the Plaintiffs regarding O'Reilly's offer, and upon advice from an attorney, the Plaintiffs filed a complaint to quiet and confirm title to the subject property on February 8, 2018.  In the complaint, the Plaintiffs asserted that they had acquired fee simple title in 1987 by virtue of Sam's last will and testament.

¶6.     On March 20, 2018, attorney J. Lane Greenlee entered an appearance on behalf of the Defendants.  He filed an answer to the complaint on their behalf on March 30, 2018, asserting a claim of title based on adverse possession.

¶7.     On April 2, 2018, represented by attorney Charles Edwards, Brenda Johnson (purportedly on behalf of herself, the Defendants, and unnamed heirs-at-law of Ethel,

_____

[7] In discovery, the Defendants stated that O'Reilly had paid Ethel or Demetrica $1,800 in annual rent in 2007, 2008, 2009, 2010, and 2012.  Brenda collected the rent in 2011 from O'Reilly in the amount of $2,000.  From 2013 to 2016, O'Reilly paid Lavern $2,000 in annual rent.

[8] During the pendency of these proceedings, O'Reilly purchased the subject property at a tax sale in August 2018, but Lavern later redeemed the property by paying the delinquent 2017 taxes.  In fact, the record indicates that the subject property was sold at a tax sale for delinquent taxes several times from 2011-2018, with either Demetrica or Lavern's redeeming the property each time.

Demetrica, and Rodney Sr.) also filed an answer and counter-complaint to quiet and confirm title. The answer alleged several affirmative defenses (i.e., failure to name a necessary party, equitable estoppel, judicial estoppel, doctrine of laches, adverse possession, and statute of limitations). The counter-complaint asserted that "the Defendants/Counter-Plaintiffs are the record owners of said subject property" and, alternatively, that since the closing of Sam's estate, "Ethel Johnson and heirs and assigns have adversely possessed said property."

¶8. The Plaintiffs filed an amended complaint on May 10, 2018. The Defendants (represented by Greenlee) filed another answer and counterclaim on June 1, 2018, again asserting only that they had title to the subject property through adverse possession.

¶9. The chancery court held status hearings on May 13, 2020, and June 22, 2020, with the Defendants now represented by attorneys Larry and Anita Stamps.[9] Edwards, Brenda's attorney, argued at the June hearing that "[t]he family cannot adversely possess the property" and that Brenda was the only one who could adversely possess the property.

¶10. The Plaintiffs filed a motion for summary judgment on September 4, 2020, which Brenda joined. Refuting the Defendants' claim that they had adversely possessed the subject property since 2004 (when the trust expired), the Plaintiffs noted that the Defendants' individual interrogatory responses plainly state their belief that they would inherit the property when Ethel died. Because Ethel died in 2011, the Plaintiffs argued that the ten-year

---

[9] Attorney Greenlee filed a motion to withdraw on January 7, 2019, which the chancery court granted.

5

statutory period for adverse possession had "not ripened." After a hearing, the chancery court denied summary judgment.

¶11. A trial on the merits was held on March 7-8, 2022.[10] Deone Johnson, a Michigan native who was a minor when the will was probated, testified that he had knowledge "that we had land in Mississippi" and "that the land was ours and that there was a will with – that was made for us." Deone admitted he did not ask questions about the land, assuming someone would "reach out" and contact them. After extensive testimony by the Plaintiffs' attorney regarding her title-search history, the chancery court granted the motion for a directed verdict as to deraignment of title, finding that "Rodney Johnson Jr., Deone Johnson, Tyronisha Seabrooks and Brenda Johnson" were the record title owners of the subject property.[11]

¶12. The chancery court then allowed the Defendants to present their case-in-chief for the counterclaim of adverse possession. Counsel for the Plaintiffs asked the court to take judicial notice that each defendant must meet the elements of adverse possession. The Defendants' attorney objected, arguing that "as a unit, as a family, they worked together to keep this property." The court said that it would "listen to the testimony and . . . apply it as the [c]ourt interprets the law."

---

[10] Between 2020 and 2022, several hearings were held concerning matters not relevant to this appeal (e.g., a proposed settlement among the parties for title to the separate 4.92-acre parcel).

[11] Rodney Sr. was deceased, and Tyrone had since conveyed his interest in the subject property to Brenda.

¶13. O'Reilly testified that "in the mid-to-early 90's" he had entered into a lease with "Sam Johnson Trust or Sam Johnson Estate" to farm the subject property. After Ethel's death, O'Reilly "dealt with Demetrica Johnson and she was aware as well that they did not own the property." After Demetrica died, O'Reilly said that Demetrica's siblings came to him to discuss what to do with the land because "[t]hey were not that familiar with the property and they wanted to get everybody in one accord as to what was what and who needed to do what." When he met with the Defendants in 2017 about purchasing the subject property, he "got the impression that some ha[d] not been on that property in a number of years and [had not] dealt with it in such a time that they did not know exactly what was where and whose was whose." O'Reilly also noted that Demetrica would occasionally get an advance on rent from him, telling him she needed it to pay the taxes.

¶14. In his affidavit entered into evidence, O'Reilly averred that Ethel and Demetrica "both told me the property didn't belong to them" and that he "understood and believed that the property was owned by the beneficiaries of the Sam Johnson estate, not by Ethel Lee Johnson, Hellena Henry or any of their heirs." He also stated that he had "maintained the property over the last twenty (20) years, not any of the local Johnson family members," and had "never seen any of Ethel Lee Johnson's or Hellena Henry's family taking care of the land in any way, including mowing, bush hogging, trimming limbs, etc." O'Reilly also noted at trial that he maintained the property "to have a crop on it . . . whatever it needed to make it productive" (e.g., "keeping ditches from washing and stop[ping] erosion").

¶15. Hellena Ingram, the former co-trustee of the property, conceded that the property belonged to Sam's heirs until 2004. However, her "belief" was that when Sam's heirs never "returned back to redeem the land or its responsibilities," her mother Ethel became the owner of the property. Hellena, who only visited Mississippi "two to three times a year," said that she had contributed funds to her mother since 2004 "to help pay the taxes, to upkeep the property, which would be cutting grass, to keep in the pasture." She claimed that "the rental money did not generate enough [to] maintain the entire property." Hellena acknowledged, however, that she "never got involved in the payment" of the taxes, noting that her "mother handled the payment process"; nor could she recall a specific amount or date when she had given money to Ethel. Although Hellena said that she directly participated in hiring individuals to maintain the property, she later clarified that Demetrica had handled the contracts or agreements for the maintenance of the subject property.

¶16. Lavern Smith, an Illinois resident, admitted she knew Sam's heirs "[o]n paper owned that property." She even possessed a copy of the will, which she later gave to Tyronisha at a family reunion (sometime after 2016). Yet Lavern stated her belief that her family owned the property "[f]rom 2006 all the way up until now." She explained to the chancellor, "After she [(Ethel)] kept it so long, she worked and her kids worked on it. . . . It was just like ours. We did everything there." She admitted that she never called Tyrone or Rodney Sr. to ask for help with the property because "it wasn't [her] responsibility."

¶17. Lavern testified that from approximately 2006 to 2011, she and her siblings would

contribute funds to help Ethel pay taxes. She produced 1099 forms for the years 2013 to 2016 for rent (approximately $2,000 annually) she had received from O'Reilly. Although she only visited Mississippi "[o]nce or twice a year," Lavern stated that she sent her mother and Demetrica money over the years "to make up for the taxes, all the cleaning up and helping to upkeep[.]" Copies of tax receipts showed that either Lavern or Demetrica repeatedly had to redeem the subject property (parcel nos. 0153600500 and 0153600700) from a tax sale for delinquent taxes assessed between years 2010 and 2017. Specifically, Lavern spent over $7,000 in taxes, interest, and penalties to redeem the property in 2013, 2017, and 2020.[12] She claimed that she also sent Demetrica money to pay the taxes the other years. After Demetrica died, Lavern said that she and her siblings (except Brenda) met with O'Reilly regarding renewing his lease for three more years. He expressed his interest in buying the subject property; so Lavern contacted Tyronisha to try to work out an agreement for them to benefit from the sale. Lavern accused O'Reilly of "[getting] in the middle" and "that's where the blow up began."

¶18. Susie Johnson testified that she "always knew by the will that [the subject property] belonged to my cousins." She claimed, however, that Ethel told her "that was our property." Her sister, Marion Grott, also testified, "Well, we knew that the land belongs to Sam Johnson's kids."

---

[12] The tax receipts indicated that the average amount of annual property (net) tax assessed between 2010 and 2017 for parcel number 0153600500 was approximately $664; the average tax assessment amount for parcel number 0153600700 was approximately $862.

¶19. The trial concluded, and the chancery court entered its final judgment on May 13, 2022. The court found that the Plaintiffs "proved they are the record title holders of the subject property." As to the Defendants' counterclaim of adverse possession, the chancery court concluded that none of the individual defendants satisfied each element of adverse possession by clear and convincing evidence.

¶20. The Defendants filed a motion to reconsider, arguing the chancery court erred in (1) failing to consider the affirmative defenses (i.e., equitable estoppel, judicial estoppel, unjust enrichment, and laches) "outlined by the Counterclaimants in their Answer and Counterclaim filed in this matter on April 2, 2018"; (2) allowing the hearings to proceed without all parties present; (3) "adopting the Plaintiffs' assertion that each defendant had to independently satisfy each element of . . . adverse possession"; (4) finding the adverse-possession claim "began to run in 2011 after the death of Ethel"; and (5) not addressing the Plaintiffs' failure to assert ownership for almost twenty years.[13] After a hearing, the chancery court denied the motion to reconsider, and the Defendants appeal from the judgment.

## STANDARD OF REVIEW

¶21. This Court's review of a chancery court's decision is limited. *Alves-Hunter v. Hunter*, 351 So. 3d 468, 476 (¶22) (Miss. Ct. App. 2022). "[U]nless the findings were manifestly in error, clearly erroneous, or the product of an erroneous legal standard," we will not disturb

---

[13] The Defendants did not challenge the court's ruling that the Plaintiffs are the record title owners on appeal.

10

the chancery court's findings. *Anderson v. Fisher*, 296 So. 3d 124, 128 (¶8) (Miss. Ct. App. 2019) (citing *O'Neal v. Blalock*, 220 So. 3d 234, 239 (¶10) (Miss. Ct. App. 2017)). "Questions of law are reviewed de novo." *Zebe LLC v. Robinson*, 296 So. 3d 211, 215 (¶10) (Miss. Ct. App. 2020).

**DISCUSSION**

I.      **Whether Ethel and her heirs had a duty to maintain the subject property past the duration of the trust.**

¶22.    The Defendants question whether Ethel and her heirs had a duty to maintain the subject property beyond the twenty years proscribed in the will or whether the Plaintiffs' inaction forced them into that situation. Part of the Defendants' argument appears to allege that no trust was ever created, noting, "There were no other documents, other than the will, which purported to establish a trust." However, any dispute regarding the creation of the trust was never put before the chancery court. *See Brown v. Brown*, 329 So. 3d 544, 560 (¶44) (Miss. Ct. App. 2021) (recognizing that "a question not raised in the trial court will not be considered on appeal"). Furthermore, Issue I does not raise a specific claim of error with regard to the chancery court's ruling, and the Defendants cite no authority in support of this issue. *See Home Sols. of Miss. LLC v. Ridge*, 301 So. 3d 670, 676 (¶23) (Miss. Ct. App. 2020) ("In the absence of meaningful argument or citation of authority, the appellate court will not consider an assignment of error.").[14] Therefore, we find this issue is waived on

---

[14] To the extent that the Defendants are arguing that the Plaintiffs abandoned the subject property, which was not pled as an affirmative defense, we would reiterate that the

11

appeal.

### II. Whether the chancery court erred in dismissing the Defendants' counterclaim of adverse possession.[15]

¶23. Noting "that each Defendant must individually prove each element of adverse possession," the chancery court dismissed the Defendants' counterclaim because none of the individual defendants could "satisfy each element of adverse possession." This Court has held, "One who seeks to acquire real property by adverse possession must demonstrate the following six essential elements by clear and convincing evidence: the property must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Massey v. Lambert*, 84 So. 3d 846, 848 (¶7) (Miss. Ct. App. 2012). The chancery court determined that because Hellena and Brenda "knew that the [subject] property was owned by the Plaintiffs pursuant to Sam Johnson's will, . . . they had 'no claim of ownership at the beginning of the statutory period and, thus, could not gain title to the property through

Defendants have not appealed the chancery court's finding that the Plaintiffs were the record title owners. Moreover, our Court has found "[t]he possessory acts" of title owners to be immaterial to the analysis of determining adverse possession. *Apperson v. White*, 950 So. 2d 1113, 1117 (¶7) (Miss. Ct. App. 2007). Although we agree that Ethel had no duty to pay the property taxes upon the trust's termination, she did have the minimum obligation, as trustee, to inform the tax assessor of the name of the person(s) responsible for the payment of property taxes going forward, which she apparently did not do. Instead, Ethel or her children continued to collect rent from O'Reilly for the subject property, which the record indicates was $2,000 annually (from 2011 to 2016), and to pay the taxes on a belated schedule.

[15] To clarify the discussion of the remaining issues, we have renumbered and combined Issues II-IV.

adverse possession.'" (Quoting *Blackburn v. Wong*, 904 So. 2d 134, 137 (¶21) (Miss. 2004)). The court also relied on this Court's holding in *Presley v. Stokes*, 290 So. 3d 763 (Miss. Ct. App. 2020), in which we found that "[b]ased on the language of the deed and the surveyor's informal opinion, the Appellants knew that they did not own Parcel 5[; so] [n]o claim of ownership existed during any period after the Appellants" had notice. *Id*. at 767 (¶13).

¶24. The Defendants appeal the chancery court's requiring each defendant to establish an individual claim that he or she adversely possessed the property. They claim that, like Ethel's children, they "collectively worked together" to maintain the property, to make "decisions regarding the leasing and usage of the subject property," and to pay the taxes. The Defendants also challenge the court's "reliance on the notice provision" in *Wong* and *Presley*, alleging that the facts in the present case are distinguishable since neither Ethel nor her children "set out to possess the subject property at the beginning of their possession."

¶25. We find the Defendants' arguments fail for several reasons. First, as the Plaintiffs assert, the Defendants were "unable to sustain a claim for adverse possession collectively" because Ethel and Hellena, as the trustees and joint executrixes of Sam's estate, had notice that they had no claim of ownership to the subject property. Furthermore, Ethel died in 2011; so the Defendants' claim fails to meet the requisite ten-year period for adverse possession. *See* Miss. Code Ann. § 15-1-13 (Rev. 2019) (requiring a ten-year period of uninterrupted continuous use to establish adverse possession).

¶26. The chancery court further determined that Lavern's possessory acts in collecting rent

from O'Reilly from 2013 to 2016 and paying taxes for a period of years were not "sufficient to fly [her] flag over the lands and to put [the Plaintiffs] upon notice that the lands are held under an adverse claim of ownership." (Quoting *Nosser v. B.P. Buford*, 852 So. 2d 57, 60-61 (¶13) (Miss. Ct. App. 2002)). This Court also noted in *Nosser* that the "payment of taxes is simply one incident to possession and whether an adverse possessor has paid property taxes is not dispositive of the claim of ownership." *Id*. at 61 (¶17). Although some of the Defendants testified to intermittent maintenance of the property,[16] we find no error in the chancery court's finding that "none of the other Defendants ever asserted any claim of ownership over the subject properties." *See Nosser*, 852 So. 2d at 61 (¶¶15-16) (recognizing that the appellants' "sporadic cutting of firewood," "bush hogging on unspecified dates in unspecified areas," and occasional hunting "would not be sufficient to fly the Nossers' flag over the lands" to put the record title owner on notice his land was being held under adverse possession).

¶27. We further find no error in the court's reliance on *Wong* and *Presley* in holding that the Defendants failed to establish claims of ownership for adverse possession. In *Wong*, Stephen Blackburn purchased two lots of land next to Ngan Chu Wong's property and constructed a law office in 1970 or 1971. *Wong*, 904 So. 2d at 135 (¶6). Blackburn was informed by a surveyor that a portion of his building was built on Wong's property. *Id*.

---

[16] None of the Defendants provided specific dates of these acts. Further, O'Reilly averred in his affidavit that he, "not any of the local Johnson family members," had "maintained the property over the last twenty (20) years."

Wanting to purchase the property, Blackburn unsuccessfully attempted to contact Wong, who now lived in California; so Blackburn chose to hold the property "adversely" until challenged. *Id.* at (¶¶5-7). Twelve years later, Blackburn erected a wooden fence that enclosed a seventeen-foot strip of Wong's land. *Id.* at (¶8). In 1998, Blackburn's attorney sent a letter to Wong claiming Blackburn owned this property by adverse possession. *Id.* at 135-36 (¶10).

¶28. Wong sued Blackburn, and the chancery court ruled in favor of Wong. *Id.* at 136 (¶¶11-12). The Mississippi Supreme Court affirmed, holding that "one cannot set out to adversely possess the property of another." *Id.* at 137 (¶¶19, 22). Because "Blackburn knew he did not own the seventeen-foot strip of lot 5," the supreme court concluded that Blackburn had no claim of ownership at the beginning of the statutory period. *Id.* at (¶21). More recently, citing *Wong*, this Court held that the appellants' claim of ownership for the purposes of adverse possession failed, as the language of the deed (which the appellants did not read prior to purchase) and a surveyor's opinion provided notice to the appellants that they did not own the parcel in question. *Presley*, 290 So. 3d at 767 (¶13). Here, we find there was sufficient evidence to show that the Defendants, through Ethel and Hellena, had notice that the subject property was owned by the Plaintiffs under the terms of Sam's will.

¶29. Accordingly, we find no error in the chancery court's ruling to dismiss the Defendants' counterclaim for adverse possession.

      **III.**    **Whether the chancery court erred by not addressing the affirmative defenses asserted in the April 2, 2018 answer and**

**counter-complaint.**

¶30.    The Defendants argue that the chancery court failed to address their affirmative defenses of "abandonment, statute of limitations, statutes of repose, doctrine of laches and equitable estoppel" in the final judgment. They claim that the Plaintiffs should have been "estopped from bring[ing] this action under the theory of equitable estoppel and laches, and to hold otherwise would result in unjust enrichment for the Plaintiffs." The Defendants repeat their assertion that because "the Plaintiffs made no effort to assert a claim of ownership," Ethel had to pay the taxes and for upkeep on the subject property.

¶31.    The Plaintiffs contend that this argument is waived because "it was their sister, Brenda Johnson, not the [Defendants], [who] asserted affirmative defenses" in her separate answer and counter-complaint. *See Hutzel v. City of Jackson*, 33 So. 3d 1116, 1119 (¶12) (Miss. 2010) (interpreting Mississippi Rule of Civil Procedure 8(c) "to mean that, generally, if a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived").

¶32.    The Defendants' March 20, 2018 answer, filed by their attorney (Greenlee), asserted a single counterclaim of adverse possession. It was the April 2, 2018 answer and counter-complaint Edwards filed, which admittedly purported to be on behalf of Brenda and her siblings and their heirs, asserted the affirmative defenses stated above. On June 1, 2018, however, the Defendants filed an answer and counterclaim to the Plaintiffs' amended complaint, again asserting only the counterclaim for adverse possession; no affirmative

16

defenses were pled.[17]

¶33. At the December 2020 hearing, the Defendants' third attorney, Edna Faye Stringer, alleged that Brenda's counsel, Edwards, had contractually agreed to represent her clients (the Defendants), and Stringer sought to have him removed from the case. Edwards denied this claim, stating that he had only received compensation from Brenda. Edwards explained to the court that the reason he "filed an answer . . . [was] because we were all on the same side early on," and he was concerned the Defendants "weren't going to get represented because Brenda was still talking to her sisters." He explained to the chancellor:

> Now – what [they] had attempted to do is the family *attempted* to hire me early on. There is always some sort of – if you were to represent two people in a car wreck, if you figure out that your representation is going to be adverse, you decide – you have to make a decision whether – as an attorney, you have to decide – you have to decide whether I can represent one or both. Now, at that time[,] from what I had understood, they decided to go be represented by Lane Greenlee. That was fine. I decided – Brenda wanted me to keep representing her so that's what I did. . . . *I've never spoke with these people directly on the phone and given them advice*. I've never done anything with them directly.

(Emphasis added). Edwards unequivocally denied representing the Defendants or legally advising them in any manner, and Stringer provided no relevant evidence at the motion's hearing to support that Edwards ever provided contractual representation with the

---

[17] This June 2018 pleading designates Brenda as a separate defendant, requesting "[t]hat the Defendants *and their sister, Brenda Lee Johnson*, be adjudicated to be the owners of the subject property by adverse possession" and "[t]hat the Judgment of the court be recorded in the land records of Holmes County as a muniment of title for the Defendants *and their sister, Brenda Lee Johnson*." (Emphasis added).

17

Defendants.[18]

¶34. Our Court has held that a defendant "must timely and reasonably raise and pursue the enforcement of any affirmative defense." *Roberts Contracting Inc. v. Mersino Dewatering Inc.*, 270 So. 3d 994, 1004 (¶31) (Miss. Ct. App. 2018). We find that the Defendants (alone) failed to argue the affirmative defenses of equitable estoppel, laches, and unjust enrichment before trial. Additionally, they did not raise these affirmative defenses at trial. This claim was not raised until the May 23, 2022 motion to reconsider, when the Defendants claimed that the court erred in not addressing the affirmative defenses in the final judgment.

¶35. Even if we were to find that the Defendants' affirmative defenses were properly raised and preserved by Brenda's April 2, 2018 pleading, we agree with the Plaintiffs that the chancery court's final judgment complies with Rule 52 of the Mississippi Rules of Civil Procedure, as it effectively conveyed the basis for the court's finding.[19] Rule 52(a) states:

[18] Stringer submitted (1) a photo of Edwards in his office signing a receipt for payment to Brenda (which appears to be dated October 2017) and (2) an undated retainer agreement only signed by Susie Johnson and Marion Grott. (It indicates it was faxed to a funeral home on January 8, 2018.) The Defendants produced no executed retainer agreement between any of the Defendants and Edwards.

[19] None of these affirmative defenses allow the Defendants relief. As noted, the Defendants never pled abandonment as an affirmative defense. *See supra* note 12. The Defendants have also not identified any applicable statutes of repose.

For equitable estoppel to apply, the Defendants must have acted in reliance upon a representation by Plaintiffs. *See Swartzfager v. Saul*, 213 So. 3d 55, 65 (¶27) (Miss. 2017). We find the two cases cited by the Defendants to support equitable estoppel are factually distinguishable. Here, the Defendants were fully aware the Plaintiffs owned the subject property by virtue of the will's terms; so their actions in paying the taxes and allegedly maintaining the property were done with that knowledge. Next, the Mississippi Supreme Court held that "laches is not a defense to an action if the plaintiff proceeds within the

"In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly." M.R.C.P. 52(a). This Court has noted "that the main purpose of Rule 52(a) was to provide the appellate court with a sufficient record to review, and to guarantee that the trial court carefully reviews the evidence provided at trial." *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 22 (¶32) (Miss. Ct. App. 2012) (citing *Pilgrim Rest Missionary Baptist Church v. Wallace*, 835 So. 2d 67, 74 (¶18) (Miss. 2003)). Thus, "a trial court has technically complied with the mandate of Rule 52 where it makes general findings of fact and conclusions of law, even though a party has made a request for specific findings." *Swiderski v. Swiderski*, 18 So. 3d 280, 284 (¶12) (Miss. Ct. App. 2009) (citing *Century 21 Deep S. Props. Ltd. v. Corson*, 612 So. 2d 359, 367 (Miss. 1992)). As Plaintiffs' counsel noted at the post-trial motion hearing, the chancery court issued a "very thorough" eighteen-page judgment, which contained detailed findings of facts and conclusions of law that clearly conveyed the basis for the decision and are sufficient for our Court to review. Our Court concluded in *Stowe v.*

---

applicable [ten-year] statute of limitations" for adverse possession. *Clanton v. Hathorn*, 600 So. 2d 963, 966 (Miss. 1992). Here, as the chancery court determined, "any interest Defendants have in the subject property . . . could not have vested until Ethel['s] death in 2011," and the Plaintiffs brought their suit within the applicable limitations period for adverse possession. Therefore, laches cannot apply.

Lastly, the Defendants did not present any evidence of how the Plaintiffs were unjustly enriched, particularly since Ethel or her heirs had been collecting the rent for the subject property. This rent should have been more than adequate to pay the taxes on the property.

*Edwards*, 331 So. 3d 24, 32 (¶31) (Miss. Ct. App. 2021), "Rule 52(a) does not require anything more."

## CONCLUSION

¶36.    Finding no error in the chancery court's final judgment, we affirm.

¶37.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH, EMFINGER AND WEDDLE, JJ., CONCUR.**